Cary CAMERON, Dennis Murphy and Michael Murphy, Plaintiffs-Appellants-Petitioners,†

v.

CITY OF MILWAUKEE, James Brennan, city attorney and Grant Langley, assistant city attorney, Defendants-Respondents.

Supreme Court

*No. 79–1370. Argued June 1, 1981.—Decided June 30, 1981.*

(Also reported in 307 N.W.2d 164.)

† Motion for reconsideration denied, without costs, on August 11, 1981.

For the petitioners there were briefs by *Robert E. Sutton* and *Walter F. Kelly* of Milwaukee, and oral argument by *Mr. Kelly*.

For the respondents there was a brief and oral argument by *Thomas E. Hayes*, deputy city attorney.

BEILFUSS, C.J.   This is a review of a decision of the court of appeals which affirmed the judgment of the circuit court for Milwaukee county: RALPH J. PODELL, Circuit Judge.

The underlying action is for indemnification commenced by three City of Milwaukee employees against the City.[1] This review requires us to decide whether the respondent, the City of Milwaukee, must indemnify the employees for losses resulting from a judgment taken

[1] The respondents in this case include the City of Milwaukee, James Brennan, city attorney, and Grant Langley, assistant city attorney. For convenience we will refer to the group simply as the "City."

against them in a civil rights action under Title 42, sec. 1983 of the United States Code. The employees are the petitioners on this review.

In a separate federal lawsuit commenced in 1973, Earl Davis, Sandra Davis, J. B. Clay, Joyce Wesley and James Ingram brought suit against the petitioners Cary Cameron, Dennis Murphy and Michael Murphy. The action was commenced in the United States District Court for the Eastern District of Wisconsin. It sought punitive and compensatory damages for alleged violations of sec. 1983 of Title 42 of the United States Code. It was claimed that by virtue of illegal acts of assault and arrest under color of state law, the petitioners violated the federal civil rights laws.

A trial was held in the federal district court before the Honorable MYRON L. GORDON in April of 1976. The matter was tried to the court. Although the action was initially dismissed at the close of the case-in-chief, this order of dismissal was reversed on appeal. *See Davis v. Murphy,* 559 F.2d 1098 (7th Cir. 1977). On remand, the trial was completed and formal findings of fact and conclusions of law were entered.

The findings of the federal court indicate that, at the time of the incident, Cameron, Murphy and Murphy were off-duty employees of the City of Milwaukee (City). Dennis Murphy and Cary Cameron were police officers. Michael Murphy was a fireman. On June 24, 1972, these three individuals were riding in a car on North 27th Street in Milwaukee. All three were dressed in civilian clothes. Although they were off duty, police officers Cameron and Murphy were subject to Milwaukee Police Department regulations requiring them to take "required police action in any manner . . . at any time."

During the early morning hours of June 24th, the petitioners encountered Earl Davis, Sandra Davis, J. B.

Clay and Joyce Wesley while riding in traffic on 27th Street. These persons were traveling behind the petitioners in their own automobile.

While in their respective cars at the intersection of Galena Street and 27th Street, Michael Murphy told the occupants of the other car to "dim their damn lights" and referred to them as "niggers." The petitioners continued to refer to the persons in the other car as "niggers" while traveling on 27th Street. Upon reaching the intersection of 27th Street and North Avenue, Michael Murphy said "so you niggers caught us, do you want to fight?"

The petitioners then got out of their vehicle and became involved in a fight on the street with the occupants of the other car. It was at this time that a fifth person, James Ingram, came to the assistance of the other four individuals.

After the fighting commenced, Cameron and Dennis Murphy identified themselves as police officers. One of the petitioners produced a gun and ordered the five black persons not to move. Uniformed police officers ultimately arrived on the scene. The five blacks were taken into custody, but none of the officers were. The individuals were detained for about ten hours until noon on the day of their arrest. At that time they were taken to the Milwaukee county district attorney's office. Although petitioner Cameron accused the five of various crimes, no charges were issued.

The federal district court concluded that by virtue of this conduct the police officers, while acting under color of law, unlawfully arrested the black persons and otherwise denied them of their constitutional rights. It was further concluded that Michael Murphy, although not a police officer, acted in a conspiracy with Dennis Murphy and Cary Cameron to violate the Fourth and Fourteenth Amendment rights of the five individuals. Compensatory

and punitive damages were assessed against the petitioners. Attorneys' fees were also awarded. Judgment was subsequently entered, and an appeal by the police officers and the fireman, the petitioners here, to the Federal Circuit Court of Appeals was unsuccessful.

In April of 1979, Cameron, Murphy and Murphy commenced the instant action to compel the City to pay the damages and costs entered against them in the federal lawsuit. The petitioners claimed that they were entitled to be reimbursed under sec. 895.46(1), Stats., for these damages and costs because such losses were occasioned by "acts committed . . . within the scope of employment. . . ."

In response, the City filed a motion to dismiss for, *inter alia*, failure to state a claim upon which relief may be granted. The court was requested to treat the motion as being akin to one for summary judgment.

The petitioners also moved for summary judgment. The argument before the trial court focused upon the relationship between action "under color of law" and the "scope of employment" element of sec. 895.46, Stats. The petitioners argued that a finding of action "under color of law" was synonymous with a finding that their deeds were "within the scope of employment" and that in light of the federal court findings of fact and conclusions of law summary judgment should be granted in their favor. The City argued that, on the basis of the federal findings, it was clear that the police officers and the fireman were not acting within the scope of their employment at the time of the altercation and thereafter.

The trial court granted summary judgment for the City. Judgment dismissing the petitioners' complaint was thereafter entered. In an unpublished opinion, the court of appeals affirmed the judgment of the trial court. *Cameron v. Milwaukee,* 99 Wis.2d 801, 300 N.W.

2d 81 (Ct. App. 1980). We subsequently granted the petition for review of this decision.

The primary question which must be determined on review is whether the "color of law" element in a sec. 1983 lawsuit is identical to the "scope of employment" element in an action by a municipal employee to recover damages and costs under sec. 895.46(1), Stats.

The plaintiff in a sec. 1983 action must prove that he has been wronged at the hands of public officials acting under color of law. Sec. 1983 of Title 42 of the U. S. Code provides:

"Every person who, under·color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia. (As amended Dec. 29, 1979, P.L. 96–170, §1, 93 Stat. 1284.)"

Conduct which is actionable under sec. 1983 must be "under color of any statute, ordinance, regulation, custom, or usage, of any State. . . ." This element of a sec. 1983 claim finds its roots in the language of the Fourteenth Amendment itself. "For all practical purposes, . . . 'color of law' and state action are the same, and mean that sec. 1983 regulates state and local governmental conduct, as distinct from purely private conduct." Nahmod, *Civil Rights and Civil Liberties Litigation*, p. 38 (McGraw-Hill, 1979). *See also Adickes v. Kress & Co.*, 398 U.S. 144, 152 (1970).

The federal "color of law" requirement must be examined in relation to the state statute which protects public employees against losses due to damages and costs entered against them in certain legal proceedings. Sec. 895.46 (1), Stats., provides in part:

"Where the defendant in any action or special proceeding is a public officer or employe and is proceeded against in an official capacity or is proceeded against as an individual because of acts committed while carrying out duties as an officer or employe and the jury or the court finds that such defendant was acting within the scope of employment the judgment as to damages and costs entered against the officer or employe in excess of any insurance applicable to such officer or employe shall be paid by the state or political subdivision of which the defendant is an officer or employe."

Under the terms of this law, a municipality is responsible for damages and costs resulting from the acts of a public employee which are within the scope of his or her employment.

The petitioners contend that Judge Gordon's findings and conclusions with respect to the element of "color of law" in the sec. 1983 claim conclusively established that they were acting within the scope of their employment at the time of the assault and arrest. Placing tacit reliance on principles of *res judicata* and collateral estoppel, it is urged that summary judgment should have been entered in favor of Cameron, Murphy and Murphy.

Assuming that the federal court judgment was properly assertable by the petitioners against the City, we do not agree that summary judgment should have been entered in favor of the petitioner employees. Regarding the effect of a finding of fact made in one trial upon the parties in a subsequent suit, the general rule was stated in *Keller v. Schuster*, 54 Wis.2d 738, 742–43, 196 N.W.2d 640 (1972):

"It is the general rule that, for a judgment to operate as res judicata and be conclusive evidence of a fact sought to be established by it, '. . . it must appear that the fact was a material or essential one, and that the judgment could not have been rendered without deciding the matter. . . .' In following and applying this rule, this court has held '. . . a finding in a former case does not create an estoppel if the fact found did not necessarily determine that case. The judgment must rest upon the fact found or the fact is open to relitigation. . . .' "

We conclude that a finding with regard to action under "color of law" is not identical to a finding that specific acts are done "within the scope of employment" of a public official or employee. A resolution of the question of whether the petitioners were acting within the scope of their employment was not essential to the rendering of the sec. 1983 judgment.

The concept of "scope of employment" has its genesis in the doctrine of *respondeat superior*. The general rule is that a master is subject to liability for the torts of his servants committed while acting within the scope of their employment. *Scott v. Min-Aqua Bats Water Ski Club*, 79 Wis.2d 316, 320, 255 N.W.2d 536 (1977). The court has defined scope of employment in the following terms:

" ' "Not every act which an agent or servant may do while he is in the place appointed for the service, or during the time in which he is engaged in the performance, can be deemed to be within the course of the employment, or within the scope of the authority. The test lies deeper than that; it inheres in the relation which the act done bears to the employment. The act cannot be deemed to be within the course of the employment unless, upon looking at it, it can fairly be said to be a natural, not disconnected and not extraordinary, part or incident of the service contemplated." ' " *Id.* quoting *Seidl v. Knop*, 174 Wis. 397, 400, 182 N.W. 980 (1921).

The scope of employment has also been defined to include those acts which are "so closely connected with what the servant is employed to do, and so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of the employment." Prosser, *Law of Torts,* (4th ed.) pp. 460–61, sec. 70 (hornbook series).

We do not perceive a substantial equation between conduct which is within the scope of a municipal or state employee's employment and conduct which may be termed "under color of law." Conduct within the scope of employment is limited to those acts which by law are attributable to the master or employer. However, for purposes of sec. 1983, acts under color of law are not limited to conduct attributable to the state by virtue of the employer-employee relationship.

In *Monroe v. Pape,* 365 U.S. 167 (1961), the United States Supreme Court considered a claim under sec. 1983 against thirteen Chicago police officers. The lawsuit in that case stemmed from a warrantless search of a home and a subsequent illegal arrest and ten hour detention. No charges were issued as a result of the search and arrest. The policemen argued that the record did not establish a violation of sec. 1983 because their conduct was not authorized by, and was a violation of, Illinois law. Quoting from its opinion in *United States v. Classic,* 313 U.S. 299, 326 (1941), the court wrote at 184:

"Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law."

Far from being limited to those actions which, in the words of our decision in *Seidl v. Knop,* 174 Wis. 397, 182

N.W. 980 (1921), are a "natural part or incident" of employment, acts of public officials may be "under color of state law" precisely when they are gross or extraordinary abuses of the authority given to them.

The federal courts have given the "color of law" element of a sec. 1983 claim a generous construction.[2] The Seventh Circuit Court of Appeals recently considered the claim of a state court judge who was sued for certain remarks made in public and in the public media. *See Harris v. Harvey,* 605 F.2d 330 (7th Cir. 1979). The federal court of appeals concluded that judicial immunity did not bar the claim against the judge because the lawsuit was premised upon acts which were not part of the judicial function. *Id.* at 337. Despite this holding, the court determined that the judge had acted under color of law because he was "using the power and prestige of his state office to damage the plaintiff." *Id.* This holding underscores the dissimilarity between acts which are "under color of law" and conduct which is "within the scope of employment."

■

The federal courts have construed sec. 1983 in a manner which allows a plaintiff to recover for a denial of a federal right by public officials who act or purport to act on behalf of the state. The wrongful conduct need not be a natural incident to the official's employment. This wrongful conduct may well be the result of a flagrant overextension of the authority delegated to the individual. It is for these reasons that we reject the suggestion that further inquiry into the factual question of whether the petitioners were acting within the scope of their em-

---

[2] *See e.g., Layne v. Sampley,* 627 F.2d 12 (6th Cir. 1980); *Traver v. Meshriy,* 627 F.2d 934, 938 (9th Cir. 1980); *Wirth v. Surles,* 562 F.2d 319, 321 (4th Cir. 1977); *Davis v. Murphy,* 559 F.2d 1098, 1101 (7th Cir. 1977).

ployment is foreclosed by virtue of Judge GORDON'S findings in the federal lawsuit.

The proper disposition of this matter remains to be determined. Although we hold that the trial court properly refused to enter summary judgment for the petitioners, the question of whether summary judgment should have been entered against them and in favor of the City must be addressed.

The supporting papers filed in this case do not justify the entry of summary judgment in favor of the City. Summary judgment is to be granted when there is no issue of material fact and the moving party is entitled to judgment as a matter of law. Sec. 802.08, Stats. It is the moving party who must supply the court with affidavits and supporting papers which establish that summary disposition is in order. *Maynard v. Port Publications, Inc.*, 98 Wis.2d 555, 562–63, 297 N.W.2d 500 (1980). To decide a motion for summary judgment, a trial court must determine whether all material facts are present, whether material facts are in dispute and whether reasonable inferences leading to conflicting results can be drawn from undisputed facts. *Jones v. Sears Roebuck & Co.*, 80 Wis.2d 321, 325, 259 N.W.2d 70 (1977). Where reasonable inferences leading to conflicting results may be drawn on the basis of uncontested facts, summary judgment is improper.

In this case, the affidavits and supporting papers relied heavily on the federal district court's findings and conclusions. On the basis of these findings, the parties argued their conflicting positions. The trial court concluded that as a matter of law the petitioners were acting outside the scope of their employment. We have reviewed the record in this case, and although the evidentiary facts are largely undisputed, we conclude that on

the basis of these facts the City is not entitled to judgment as a matter of law. Reasonable inferences drawn from these facts could lead a finder of fact to conclude that the petitioners were acting within the scope of their employment. Conversely, such inferences could have led to an opposite conclusion. An evidentiary proceeding is therefore required.

A public official or employee who is sued under sec. 1983 may be found to have been acting under color of law, but such a finding does not conclusively establish that the official or employee was acting within the scope of his or her employment. The petitioners in this case were determined to have been acting under color of law when they assaulted and arrested five individuals in 1972. On remand, the question of whether the petitioners acted within the scope of their employment must be resolved.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded to the circuit court for further proceedings not inconsistent with this opinion.

STEINMETZ, J., took no part.