George C. HIBMA, Plaintiff,

v.

Richard T. ODEGAARD, James Nikodem, and Michael Paul Szula, Defendants,

and

Sawyer County, Wisconsin, Intervening Defendant.

No. 82–C–548–S.

United States District Court, W.D. Wisconsin.

Jan. 9, 1984.

Wahl & Wahl, Garvey, Anderson, Kelly & Ryberg, Eau Claire, Wis., for plaintiff.

Smoler, Albert & Rostad, Fritschler, Pellino, Schrank & Rosen, Coyne & Niess, Madison, Wis., for defendants.

### ORDER

SHABAZ, District Judge.

This action is before the Court on several motions after verdict, the most significant of which is the motion of intervening defendant Sawyer County for judgment notwithstanding the verdict. That motion is granted, while the remaining motions are denied.

### BACKGROUND

Defendants Richard T. Odegaard, James Nikodem, and Michael Paul Szula are former Sawyer County deputy sheriffs who plead guilty, in 1981 and 1982, to separate federal indictments stemming from their involvement as deputies in the 1977 arrest and conviction of plaintiff George C. Hibma.

Subsequently, Hibma began this action under 42 U.S.C. § 1983, alleging in his second amended complaint that the three defendants had, while acting as agents for Sawyer County under color of state law, deprived him of rights secured by the Fourth, Eighth and Fourteenth Amendments to the United States Constitution and committed the common law torts of trespass, false arrest and imprisonment, abuse of process, and intentional infliction of emotional distress against him. Hibma also asserted that in the event he obtained judgment against the individual defendants, he would be entitled to proceed in indemnification against Sawyer County pursuant to Wis.Stat. § 895.46 (1977–78). Section 895.46 provides that,

(1) Where the defendant in any action or special proceeding is a public officer or employe and is proceeded against in an official capacity or is proceeded against as an individual because of acts committed while carrying out duties as an officer or employe and the jury or the court finds that such defendant was acting within the scope of employment the judgment as to damages and costs entered against the officer or employe in excess of any insurance applicable to such officer or employe shall be paid by the state or political subdivision of which the defendant is an officer or employe.... Regardless of the results of the litigation the governmental unit, when it does not provide legal counsel to the defendant officer or employe, shall pay reasonable attorney's fees and costs of defending the action, unless it is found by the court or jury that the defendant officer or employe did not act within the scope of employment.... Deputy sheriffs in those counties where they serve not at the will of the sheriff but on civil service basis shall be covered by this subsection, except that the provision relating to payment of the judgment shall be discretionary and not mandatory. In such counties the judgment as to damages and costs may be paid by the county if approved by the county board.

Based upon its potential liability in indemnification and defendants Nikodem and Szula's initial tendering of their defense to the County pursuant to the statute, Sawyer County moved to intervene in the lawsuit. No party objected and the Court granted the county's motion. Soon afterwards, Sawyer County moved for judgment on the pleadings, arguing that as a matter of law defendants were not acting within the scope of their employment as deputy sheriffs in committing the acts alleged, precluding the county's liability under § 895.46. Finding that, "[T]he nature of several of the acts alleged, when considered with plaintiff's conclusive allegation that the individuals were acting as agents of Sawyer County, could support an inference that at least part of the deputies' conduct was within the scope of their employment [with Sawyer County]," the Court denied the county's motion.

Prior to trial, defendants Nikodem and Szula withdrew their answers and in effect defaulted, stipulating that judgment could be taken against them in whatever amount the Court or jury would determine after hearing.

The case proceeded to trial before a jury against defendant Odegaard, appearing *pro se,* and Sawyer County. In the liability phase of the bifurcated trial, the jury heard testimony and viewed exhibits from plaintiff Hibma, defendant Odegaard, ex-Sheriff Lien, and Federal Bureau of Investigation Agent Charles Southworth. After the plaintiff's case was presented, intervening defendant Sawyer County moved for directed verdict and the Court reserved ruling. Then, after the parties stipulated to the submission of the action to the jury on the constitutional claims alone (the pendent state claims were largely duplicative), the parties made their closing argument and the Court instructed the jury on the law. The instructions included a tailored version of Wisconsin Civil Jury Instruction 4035 on the scope of employment issue.

After less than two hours of deliberation, the jury returned a verdict in favor of the plaintiff by answering the special verdict questions as follows:

Question 1: Did defendant Richard T. Odegaard deprive plaintiff George C. Hibma of any of his constitutional rights?

Answer: Yes

Question 2: Were any of the defendants acting within the scope of their employment with Sawyer County while depriving plaintiff George C. Hibma of his constitutional rights?

Answer: Yes

Question 3: If you answered yes, check which defendant(s) were so acting.

Answer:  X  Richard T. Odegaard

 X  James Nikodem

 X  Michael Paul Szula

## MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT

■ On motion for judgment notwithstanding the verdict, the trial court must decide whether, when viewed in the light most favorable to the non-movant, the evidence and all reasonable inferences that can be drawn from it are insufficient to support the verdict. *Appleman v. United States,* 338 F.2d 729, 731 (7th Cir.1964).

Viewed in the light most favorable to plaintiff Hibma, the evidence adduced in the liability phase of the trial established the following facts:

### Facts

In March and April of 1977, defendants Odegaard, Nikodem, and Szula hatched a plot to frame plaintiff Hibma for a series of Sawyer County burglaries that they themselves had committed, both to direct suspicion for those crimes away from themselves and to discredit the then-Sheriff of Sawyer County, Ernest Lien. Hibma, who had two prior criminal convictions, was employed as a carpenter by Sheriff Lien's son during the relevant time period.

The defendants set their scheme in motion by soliciting William Proffitt, an acquaintance of Hibma who was also a thief serving a sentence with work-release privileges at the Sawyer County Jail, to approach Hibma and attempt to talk him into stealing guns that he, Proffitt, would supposedly fence. Proffitt agreed to cooperate with the deputies, and accordingly approached Hibma several times over a period of weeks, eventually convincing him to steal a handgun from a construction site on April 19, 1977. Hibma then delivered the gun to Proffitt, who in turn transferred it to the deputies. The defendants arrested Hibma for suspicion of burglary and theft on April 21, 1977 as he attempted to rendezvous with Proffitt to divide the proceeds from the purported sale of the handgun.

The three defendants then took Hibma to the Sawyer County Sheriff's Department, where they proceeded to interrogate him regarding the handgun theft and other unsolved Sawyer County burglaries, including those that they themselves had committed. Ignoring Hibma's request for an attorney and his repeated requests for medical treatment to ease drug withdrawal symptoms that he was beginning to experience, the defendants continued questioning Hibma for several hours. Hibma eventually confessed to the handgun burglary and theft, and also gave defendants written consent for a search of his home.

One or all of the defendant deputies then proceeded to Hibma's home with property that had been stolen in the deputies' own burglaries and planted that property on the premises, where it was discovered a short time later in their search of the home with the sheriff and other deputies not involved in the conspiracy. One or all of the defendants also removed personal property belonging to Hibma from his home. Afterwards, the defendants brought the recovered stolen property to the sheriff's department, where they confronted Hibma with it and tried to coerce him into confessing to their own burglaries. Again, they ignored his requests for medical attention and, when he refused to confess to the other burglaries, left him confined in the jail. Hibma then broke his eyeglasses and slashed his wrists with the shattered glass in order to draw attention to his plight. After the doctor who had examined Hibma's wrist wounds obtained a court order for his transfer to a hospital, Hibma was transferred on April 22, 1977 to the Dunn County Health Care Center, where he underwent several weeks' treatment for drug dependency.

That same day, defendant Nikodem filed investigative and administrative reports describing the stolen property recovered from Hibma's home and concluding that Hibma had perpetrated many of the recent unsolved burglaries that had taken place in Sawyer County. In fact, Nikodem knew that the property had been planted at Hibma's residence and that many of those unsolved burglaries had been committed by himself and his co-conspirators. Defendant Szula corroborated the false information in a criminal complaint sworn out for the District Attorney, and defendant Odegaard repeated it in open court at Hibma's plea hearing.

More than two months later Hibma, not knowing of the defendants' conspiracy to entrap him, plead guilty on his attorney's advice to the charges stemming from his handgun burglary and theft pursuant to a plea agreement providing for the dismissal of the remaining burglary charges. He was sentenced to two years in prison and actually served one year and a day of that sentence in various state and county institutions before his release on April 22, 1978.

Hibma first learned of the defendants' conspiracy with Odegaard's December 16, 1981 guilty plea to a federal indictment charging him with conspiracy to deprive Hibma of his civil rights, which had been returned following an investigation of the entire affair by the Federal Bureau of Investigation. Defendants Szula and Nikodem also eventually plead guilty to related federal charges. Hibma filed this action soon afterwards.

*Law and Legal Conclusions*

The issue presented is whether a reasonable finder of fact could have found, on the facts described above, that defendants Odegaard, Nikodem, and Szula were acting within "the scope of their employment" with Sawyer County, as that term is used in § 895.46, while depriving plaintiff Hibma of his constitutional rights.

Under common law, the concept of scope of employment serves as a rather vague, indefinite limitation upon an employer's vicarious liability for the tortious acts of its employees. *See generally*, William C. Prosser, *Law of Torts* § 70 (4th ed. Hornbook Series, 1971). The Wisconsin pattern jury instruction on the term, derived from Wisconsin caselaw, the Restatement of Agency, and other sources, describes the characteristics of an employee's act within the scope of the employment:

A servant is within the scope of his employment when he is performing work or rendering services he was engaged to perform and render within the time and space limits of his authority, and is actuated by a purpose to serve his master in doing what he is doing. He is within the scope of his employment when he is performing work or rendering services in obedience to the express orders or direction of his master, or doing that which is warranted within the terms of his express or implied authority, considering the nature of the services required, the instructions which he has received, and the circumstances under which his work

is being done or the services are being rendered.

A servant is outside the scope of his employment when he deviates or steps aside from the prosecution of his master's business for the purpose of doing an act or rendering a service intended to accomplish an independent purpose of his own, or for some other reason or purpose, not related to the business of his master.

Wisconsin Civil Jury Instruction 4035.

In *Cameron v. Milwaukee*, 102 Wis.2d 448, 307 N.W.2d 164 (1981), the Wisconsin Supreme Court equated the scope of employment language of § 895.46 with the common law limitation. The *Cameron* court wrote:

The concept of "scope of employment" has its genesis in *respondeat superior* ... "Not every act which an agent or servant may do while he is in the place appointed for service or during the time for which he is engaged in the performance, can be deemed to be within the course of employment, or within the scope of the authority. *The test lies deeper than that; it inheres in the relation which the act done bears to the employment.*" ... The scope of employment has also been refined to include those acts which are "so closely connected with what the servant is employed to do, and so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of the employment."

*Id.*, 307 N.W.2d at 168 (citations and attributions omitted, emphasis added). The position adopted by the court in *Cameron* is consistent with earlier decisions holding that the Legislature's purpose in creating § 895.46 and its predecessor statutes was to protect public officials acting on behalf of the state or local government from judgments arising out of their official duties. *See Horace Mann Insurance Company v.*

*Wauwatosa Board of Education,* 88 Wis.2d 385, 276 N.W.2d 761 (1979); *Thuermer v. Village of Mishicot,* 86 Wis.2d 374, 272 N.W.2d 409 (1978).[1]

■ Under either the common law or statutory scope of employment concept, an employee's tortious act is not within the scope of his or her employment unless two criteria are satisfied: the act must have been part of or reasonably incidental to the duties he or she was hired, directed, or expected to perform *and* it must have been intended to benefit the employer. Several recent cases arising under § 895.46 confirm the applicability of both scope of employment criteria in that context.

In *Cameron* itself, the issue was whether factual findings supporting a federal court's conclusion that two off-duty police officers had acted "under color of law" in depriving plaintiffs of their constitutional rights required or precluded a finding in a later lawsuit for indemnification under § 895.46 that the officers had acted within the scope of their employment with the City of Milwaukee. In the earlier federal case, the court found that the white off-duty officers had, while driving in a private vehicle, harassed the black occupants of another private vehicle. The harassment led to a street brawl, with the officers eventually using their authority as peace officers to subdue and arrest the black citizens.

On those facts, there was certainly no question that the officers, though off duty, had effected the arrest by performing the duties that they had been hired to perform, but the trial court in the indemnification lawsuit granted summary judgment in favor of the city, apparently believing the officers were acting for purely personal reasons in making the arrests.

In reversing, the Supreme Court held that,

not even an arguable claim that the defendant ex-deputies acted in good faith. *Cf. Schroeder, Gedlen, Riester, etc. v. Schoessow,* 108 Wis.2d 49, 321 N.W.2d 131 (1982).

---

1. Caselaw suggesting that the statutory scope of employment is broader than at common law, encompassing acts undertaken with a good faith belief that they were within the scope of employment, is inapplicable here because there is

[A] finding with regard to action under "color of law" is not identical to a finding that specific acts are done "within the scope of employment" of a public official or employee. A resolution of the question of whether the petitioners were acting within the scope of their employment was not essential to the rendering of the section 1983 judgment.... reasonable inferences drawn from these facts would lead a finder of fact to conclude the petitioners were acting within the scope of their employment. Conversely, such inferences could have led to an opposite conclusion.

*Cameron*, 307 N.W.2d at 168, 170. A Milwaukee Police Department regulation requiring officers to take "police action in any manner ... at any time," was perhaps the most striking fact noted by the court supporting an inference that the officers were acting for the benefit of the city, rather than themselves. *Id.* 307 N.W.2d at 166.

In *Harris v. County of Racine*, 512 F.Supp. 1273 (E.D.Wis.1981), a federal court likewise applied the two scope of employment criteria isolated above to determine Racine County's liability under § 895.46 for the actions of a county circuit court judge. There, the court adopted a finding from an earlier § 1983 action in which the judge was a defendant that the judge had not acted in a judicial capacity while depriving the injured party of his civil rights. As the judge had not been acting in a judicial capacity, he could not have been carrying out the duties of his office, precluding a finding that he had acted within the scope of his employment and was entitled to indemnification under § 895.46. *Id.* at 1279.

Similarly, even a court adopting a relatively expansive view of a public employer's vicarious liability under the statute required that both scope of employment criteria be met. *Bell v. City of Milwaukee*, 536 F.Supp. 462 (E.D.Wis.1982) involved a police officer's fatal shooting of an unarmed citizen, the officer's subsequent planting of a knife on the citizen's person, his lies to high police officials, his perjury at an inquest, and the eventual coverup of the entire incident by local officials. The court found that the acts performed by the officer, i.e. pursuing a suspect, using deadly force and participating in an investigation, were unquestionably among the duties of a police officer. Moreover, although it found the officer had acted as he had to escape punishment for his wrongdoing, the court also found, in light of the massive coverup that eventually took place, that his acts were "designed to further the objectives of his employment." *Id.* at 478.

■ Applying the two criteria for determining whether public employees have acted within the scope of their employment to the immediate case, the Court finds that, unlike in *Bell* or *Cameron*, there are no facts or inferences supporting a finding that defendants Odegaard, Nikodem and Szula were acting for anything other than their own purposes in entrapping plaintiff Hibma, engineering his arrest, planting evidence in and stealing property from his home, denying him medical attention during drug withdrawal, seeking the issuance of a complaint charging him with scores of burglaries they knew he had not committed and finally securing his guilty plea and conviction through coercion and false testimony. The ex-deputies' plot to hide their own burglaries did not evolve *after* they had entrapped and arrested Hibma; rather, the plot was the cause and purpose of their actions from the very beginning of their illegal conduct.

Given the defendants' purely personal motivation, it would be inconsistent with precedent and the policies behind § 895.46 alluded to above to allow the jury's verdict on scope of employment to stand. Indemnification of the defendants under these circumstances would not provide any greater reassurance to public employees concerned about incurring personal liability through the exercise of their judgment in performing official duties; however, it could send a message to potential wrongdoers within the public employee ranks that they can abuse the trust and authority of their offices with impunity. Although the Court sympathizes deeply with plaintiff

Hibma, it cannot in conscience uphold the jury's verdict and risk sending that message.

The Court's decision to grant judgment notwithstanding the verdict is not meant, however, to indicate that the Court has anything but the greatest respect for the jury that returned the verdict. The scope of employment concept is a difficult one, especially where it is couched in a jury instruction that is none too easily understood by lawyer or lay person. Moreover, in this case the jury was hobbled by a closing argument that gave short shrift to the motivation element in scope of employment. Plaintiff's attorney, Mr. Garvey, stated,

So when they [the defendants] did it to Hibma, they were doing the things, the tasks, the jobs assigned, for which they are being paid. Now, that is scope of employment ...

Now, there will be some language that if a person [is] actuated ... by a purpose to serve his master in doing what he is doing. That has reference to the tasks that they were required to do ...

[T]he directions and instructions and order of the employer never changed. That was always to arrest, to investigate, to report, [to] do the things that deputy sheriffs do, the things that deputy sheriffs are hired to do. In other words, [they] are hired to stay within the scope of their employment. Now, if they use those things for their own personal and improper motives, that is fine, fine, but ... that does not take them outside the scope of their employment.

Counsel's somewhat distorted statement of the law may bear some of the responsibility for the verdict returned by the jury.

In light of the above disposition of Sawyer County's motion for judgment notwithstanding the verdict, its remaining motions for alteration of the judgment, a new trial on the liability issue, and for stay of execution are now moot.

Regarding plaintiff Hibma's motions, the Court finds the total amount of damages awarded by the jury was neither clearly excessive nor clearly deficient; it therefore declines to order a new trial on damages or add to the total award. In reviewing the materials submitted by Hibma in support of his motion for an award of attorney's fees, the Court notes that he did not attempt to distinguish time spent preparing the case against Sawyer County from time spent preparing the case against the individual defendants; as Hibma did not prevail against Sawyer County, the Court must deny his attorney's fee motion pending submission of materials apportioning the total fees incurred between the case against the individuals and the case against the county.

Accordingly,

## ORDER

IT IS ORDERED that Sawyer County's motion for judgment notwithstanding the verdict is GRANTED.

IT IS FURTHER ORDERED that all other pending motions are DENIED.

IT IS FURTHER ORDERED that the Court's previous order entering judgment against Sawyer County is VACATED.

IT IS FURTHER ORDERED that judgment be entered in favor of the plaintiff, George C. Hibma, against defendants Richard T. Odegaard, James Nikodem, and Michael Paul Szula, jointly and severally, in the sum of $106,500 and costs; and, in addition, against defendant Richard T. Odegaard in the sum of $20,000, against James Nikodem in the sum of $20,000, and against Michael Paul Szula in the sum of $20,000, severally.