Cassie DESOTELLE,† Plaintiff-Appellant,

v.

CONTINENTAL CASUALTY CO., Brown County
and Gordon Gille, Jr., Defendants-Respondents.

Court of Appeals

*No. 86–0443. Orally argued October 22, 1986.—Decided
December 23, 1986.*

(Also reported in 400 N.W.2d 524.)

† Petition to review denied.

14

16

For the plaintiff-appellant, Cassie Desotelle, there was a brief submitted by *John A. Evans* and *John P. Duffy* of Green Bay, and oral argument by *John A. Evans*.

For the defendant-respondent, Gordon Gille, Jr., there was a brief and oral argument by *R. Paul Mohr* of *McKay, Mohr & Beinlich, S.C.* of Green Bay.

For the defendants-respondents, Brown County and Continental Casualty Co., there was a brief and oral argument by *William C. Griesbach* of *Liebmann, Conway, Olejniczak & Jerry, S.C.*, of Green Bay.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J.   Cassie Desotelle appeals a judgment dismissing an action in which she sought to enforce a federal damage award against Brown County and its insurer, Continental Casualty Company. Desotelle argues that the trial court erred by impaneling an advisory jury to determine whether Gordon Gille had been acting within the scope of his employment when he falsely imprisoned her. She asserts that the federal jury had previously determined this issue and that all facts were undisputed. Consequently, she contends that under sec. 895.46(1), Stats., the court's reasoning in *Bell v. City of Milwaukee*, 536 F. Supp. 462. (E.D. Wis. 1982), *modified*, 746 F.2d 1205 (1984), or the terms of Continental's insurance policy, she is entitled to judgment as a matter of law. We disagree and affirm the judgment.[1]

---

[1]Gille has filed a brief in which he urges this court to direct the trial court to enter summary judgment in Desotelle's favor and

In 1980, Brown County Sheriff's Deputy Gordon Gille discovered Cassie Desotelle and her boyfriend in a parked car. Gille was on regular patrol duty and in full uniform. Allegedly suspecting underage drinking, Gille removed Desotelle to his squad car for questioning. While in the squad car, Gille sexually assaulted Desotelle. Gille was convicted of sexual assault and received a three-year prison term.

In 1981, Desotelle commenced a federal civil rights action under 42 U.S.C.A. sec. 1983 (West 1981) alleging false imprisonment against Gille and Brown County's insurer, Continental Casualty Company. Continental's insurance policy with Brown County extended liability coverage to all county employees, such as Gille, for acts within the scope of their duties. Additionally, Continental's insured, Brown County, could be required under sec. 895.46(1) to indemnify Gille for any damage award. This statute requires a public employer to indemnify an employee for damages arising from an action that was based upon acts the employee committed within the scope of his employment.

to order Continental or Brown County to indemnify him for the federal judgment. However, he has not filed a cross-appeal. A respondent who seeks modification of a judgment appealed from must file a cross-appeal. Section 809.10(2)(b), Stats. Failure to file a timely cross-appeal deprives this court of jurisdiction to hear that appeal. Section 809.10(1)(b), Stats. An appellate court has a duty to inquire as to its own jurisdiction, *State ex rel. Teaching Assistants v. Wisconsin-Madison University*, 96 Wis. 2d 492, 495, 292 N.W.2d 657, 659 (Ct. App. 1980), and it may not be conferred on an appellate court by waiver or consent of the parties. *State ex rel. Skinkis v. Treffert*, 90 Wis. 2d 528, 535, 280 N.W.2d 316, 319 (Ct. App. 1979). Because Gille has failed to file a cross-appeal, he has waived appellate review of his arguments. *See State v. Huff*, 123 Wis. 2d 397, 407–08, 367 N.W.2d 226, 231–32 (Ct. App. 1985).

Continental moved for its dismissal from the civil rights action on three grounds: (1) The Civil Rights Act did not permit suits against its insured, Brown County, and therefore its insurer was not a proper party to the action; (2) Gille's misconduct was outside the scope of his employment and neither Continental under the insurance policy nor the county under sec. 895.46(1) could be required to indemnify Gille; and (3) Gille's misconduct was excluded from the insurance policy's liability coverage by the policy's criminal act exclusion provision. The federal court granted the motion on the first ground and dismissed Continental from the case. The court specifically declined to address the "scope of employment" issue or the insurance policy's exclusionary provision. The court held these issues were state law matters that the state courts should determine. Fearing that the scope of employment issue might still be litigated in the federal forum, Continental attempted to reenter the case but its motion was denied.

In the federal trial, Desotelle's counsel argued, and Gille's counsel conceded, that Gille had been acting within the scope of his employment when the incident occurred. In response to a special verdict question, the jury found that Gille's acts in falsely imprisoning Desotelle were done within the scope of his employment. The jury awarded Desotelle $38,200 in damages to which the court added $12,400 for attorney fees and costs.

In 1984, Desotelle brought a state action against the county and Continental to enforce the federal judgment. The claim against the county was based on the indemnification provisions of sec. 895.46(1). The claim against Continental was based on its insurance policy with the county. Both defendants asserted that

Gille's misconduct was not within the scope of his employment. As such, they claimed that sec. 895.46(1) was inapplicable and that the insurance policy did not provide liability coverage. Desotelle responded that the federal jury had previously determined that Gille had been acting within the scope of his employment, that no facts were in dispute, and that she was entitled to judgment as a matter of law. All parties moved for summary judgment.

The state trial court questioned the federal court's submission of the "scope of employment" issue to the jury after it had stated that this issue was for the state courts to determine. The court concluded that the federal jury's determination as to "scope of employment" was not binding on the defendants because they had not been parties to the federal proceeding and because that determination was not necessary to the civil rights action. However, the court concluded that the federal jury's determination as to false imprisonment under color of law and damages was binding on the defendants. The court impaneled an advisory jury to determine the "scope of employment" issue but reserved the right to rule on this issue as a matter of law.

The advisory jury found that Gille had not been acting within the scope of his employment when he falsely imprisoned Desotelle. The court adopted the jury's finding and dismissed Desotelle's complaint with prejudice.

Desotelle argues that the federal jury's finding that Gille was acting within the scope of his employment was binding on the county and Continental in the state action. We deem this argument to be based on the common law doctrines of res judicata and collateral estoppel.

Whether the doctrines of res judicata or collateral estoppel bar relitigation of an issue is a question of law. *Landess v. Schmidt*, 115 Wis. 2d 186, 191–98, 340 N.W.2d 213, 216–19 (Ct. App. 1983). Res judicata makes a final adjudication on the merits in a prior action conclusive in a subsequent action between the same parties, or their privies, as to all matters that were litigated or that might have been litigated. *Id.* at 190–91, 340 N.W.2d at 215–16. For the doctrine to apply, there must be an identity of parties and an identity of the causes of action or claims in the two actions. *Id.* at 191, 340 N.W.2d at 216. Collateral estoppel precludes relitigation of an issue of ultimate fact previously determined by a valid final judgment. *Id.* at 198, 340 N.W.2d at 219. For the doctrine to apply, the determination of the issue must be essential to the judgment. *Id.*

Neither the doctrine of res judicata nor collateral estoppel renders the federal jury's determination binding upon the county or Continental. We note initially that there was not a unity of parties because the county and Continental were not part of the federal action. Similarly, there was not a unity of issues because the issues litigated in the federal action did not require a determination in regard to scope of employment.

The doctrines of res judicata and collateral estoppel are founded upon principles of fundamental fairness. These doctrines are designed to balance judicial economy and the need to bring litigation to a final conclusion with every party's right to have a judicial determination made as to their contentions. *Id.* at 191, 340 N.W.2d at 213–14. When the matter is

fully and fairly litigated, litigation as to those same issues is precluded. These doctrines, however, may never be applied in such a fashion as to deprive a party of the opportunity to have a full and fair determination of an issue. *See Kichefski v. American Family Mutual Ins.*, 132 Wis. 2d 74, 79–81, 390 N.W.2d 76, 78–79 (Ct. App. 1986).

To apply the doctrines under the circumstances of this case would be grossly and manifestly unfair. The county and Continental never had an opportunity to litigate the scope of employment issue in the federal forum and the issue was not germane to those proceedings. Furthermore, neither of the parties to the federal action had an incentive to litigate the scope of employment issue. To the contrary, it was in the interest of both parties to urge the jury to find that Gille had been acting within the scope of his employment. Under these circumstances, neither res judicata nor collateral estoppel are applicable. *See Crowall v. Heritage Mutual Ins. Co.*, 118 Wis. 2d 120, 125–26, 346 N.W.2d 327, 331 (Ct. App. 1984).

Nor is the county required to indemnify Gille under sec. 895.46(1)(a) on the basis of the federal jury's finding. Section 895.46(1)(a) provides in part:

> If the defendant in any action ... is a public officer or employe and is proceeded against ... because of acts committed while carrying out duties as an officer or employe and the jury or the court finds that the defendant was acting within the scope of employment, the judgment ... shall be paid by the state or political subdivision of which the defendant is an officer or employe.

22

It is true that the statute speaks in terms of "any action," and Gille was found in the federal action to be acting within the scope of his employment. We conclude, however, that the federal jury's finding is not binding on the county for purposes of indemnification under sec. 895.46(1).

The interpretation of a statute is a question of law reviewed independently of the trial court's decision. *P.A.K. v. State*, 119 Wis. 2d 871, 876, 350 N.W.2d 677, 680 (1984). A statute, or any phrase or word therein, is ambiguous if it is capable of being understood by reasonably well-informed persons in either of two or more senses. *In re Haese's Estate*, 80 Wis. 2d 285, 292, 259 N.W.2d 54, 56–57 (1977). If a statute's language is ambiguous, a court will examine the scope, subject matter, history, context, and object of the statute to discern the legislative intent. *DeMars v. LaPour*, 123 Wis. 2d 366, 370, 366 N.W.2d 891, 893 (1985). A statute must be interpreted so as to avoid an absurd or unreasonable result. *Id.* The entire section of a statute is to be considered in its construction. *State v. Clausen*, 105 Wis. 2d 231, 244, 313 N.W.2d 819, 825 (1982).

The phrase "any action" as used in sec. 895.46(1) is ambiguous. The phrase could mean any proceeding in which an employee is found to have been acting within his "scope of employment" regardless of whether a determination on this issue was necessary to the proceeding, litigated, or the public employer was a party to the proceeding. Conversely, "any action" could mean only those proceedings in which a determination on the scope of employment issue is necessary to the proceeding, litigated, and the employer has had an opportunity to contest the issue.

23

We conclude that the phrase "any action" as used in sec. 895.46(1)(a) envisions a trial in which the issue of "scope of employment" is essential to the resolution of the rights of the parties and that evidence in support of, and opposed to, the contention will be introduced and argued. In 1979, the legislature revised the statute and added the following language:

> If the employing state agency ... denies that the ... employe ... was doing any act growing out of or committed in the course of the discharge of his or her duties, the attorney general may appear on behalf of the state to contest that issue ... If the ... employe refuses to cooperate in the defense of the litigation, the ... employe ... is not eligible for any indemnification.

Section 842, ch. 221, Laws of 1979.

The addition of this language demonstrates that the legislature intended to afford a public employer an opportunity to deny and contest the scope of employment issue. See *Schroeder v. Schoessow*, 108 Wis. 2d 49, 67, 321 N.W.2d 131, 140 (1982). Because the legislature intended to afford an employer such an opportunity, it could not have been the legislature's intent to hold an employer bound to a prior determination made on this issue in an action in which the employer was not a party, the issue was nonessential to the rights of the parties involved, and unlitigated. Such an interpretation of sec. 895.46(1)(a) would lead to the absurd result of binding an employer to a prior determination on this issue simply because it was submitted to the trier of fact for its consideration. This was not the legislature's intent.

Here, the federal jury's determination on the scope of employment issue was not essential to the civil rights action and the rights of the parties involved. *See Cameron v. City of Milwaukee*, 102 Wis. 2d 448, 456, 307 N.W.2d 164, 168 (1981). The jury found that Gille was acting in the scope of his employment when no party argued the contrary position. A determination on a nonessential issue, unlitigated and without an opportunity for the county or Continental to contest the issue, is not sufficient to trigger the provisions of sec. 895.46(1).

Next, Desotelle argues that the trial court erred by impaneling an advisory jury. She maintains that the trial court should have ruled as a matter of law as to whether Gille was acting within the scope of his employment when he falsely imprisoned her. She points out that in *Bell*, 536 F. Supp. at 475–78, the court concluded that this issue was a matter of law. She also submits that under the terms of Continental's insurance policy, she was entitled to judgment as a matter of law. *See Kozak v. United States Fidelity & Guaranty Co.*, 120 Wis. 2d 462, 466–67, 355 N.W.2d 362, 364 (Ct. App. 1984). Because Desotelle asserts that the question before the trial court was one of law, she asks this court to independently review the trial court's decision. *See Stoll v. Adriansen*, 122 Wis. 2d 503, 509, 362 N.W.2d 182, 186 (Ct. App. 1984).

On the other hand, the county and Continental contend that the scope of employment issue was a disputed question of fact, which was properly submitted to the trier of fact to determine. Consequently, they argue that we must defer to the trier of fact's finding on this issue unless there is no credible evidence to support it. *Fehring v. Republic Ins. Co.*,

25

118 Wis. 2d 299, 305–06, 347 N.W.2d 595–98 (1984); sec. 805.17(2), Stats. We agree.

In determining the correct standard of review, we must determine whether the "scope of employment" issue is properly labeled a question of law or a question of fact. The authorities examining this question are in conflict. In *Cameron*, 102 Wis. 2d at 457–58, 307 N.W.2d at 169, the court concluded that the "scope of employment" issue was one of fact and remanded the case for a determination on this issue. Conversely, in *Bell*, 536 F. Supp. at 475–78, the court concluded that this issue was a question of law and reached its own conclusion as to whether the tortfeasor was acting within the scope of his employment. *But see Hibma v. Odegaard*, 769 F.2d 1147 (7th Cir. 1985).

In *Cameron*, our supreme court determined that an "act cannot be deemed to be within the course of the employment unless, upon looking at it, it can fairly be said to be a natural, not disconnected and not extraordinary, part or incident of the service contemplated."[2] *Cameron*, 102 Wis. 2d at 457–58, 307 N.W.2d

---

[2] It may be suggested that the *Cameron* court's enunciation of the "scope of employment" test was not an attempt to set forth a definitive standard under which to determine whether an employee was acting within the scope of his employment. Rather, the court indicated that it may be proper to impose liability on the employer if the relationship of the act committed and the service contemplated is sufficiently close. Most certainly such an inquiry is not measured from the employer's viewpoint or expectations but on an objective basis. The court stated:

> The scope of employment has also been defined to include those acts which are "so closely connected with what the servant is employed to do, and so fairly and reasonably incidental to it, that

at 168 (quoting *Seidl v. Knop*, 174 Wis. 397, 400, 182 N.W. 980 (1921)). The court concluded that whether under this analysis a tortfeasor was acting within the scope of his employment was a material issue of fact to be determined by the finder of fact. *Cameron*, 102 Wis. 2d at 459–60, 307 N.W.2d at 170. *See also Schroeder*, 108 Wis. 2d at 70, 321 N.W.2d at 140–41. That decision is binding on this court. *State ex rel. McCaffrey v. Shanks*, 124 Wis. 2d 216, 369 N.W.2d 743 (Ct. App. 1985); *State v. Stanton*, 106 Wis. 2d 172, 316 N.W.2d 134 (Ct. App. (1982). Accordingly, we conclude that whether Gille was acting in the scope of his employment when he falsely imprisoned Desotelle was an issue of material fact.

Desotelle contends that the material facts presented to the trial court were undisputed and that therefore the court's determination as to the "scope of employment" issue should have been rendered as a matter of law. If the material facts are undisputed, a court may properly enter a judgment as a matter of law. *Heck & Paetow Claim Service v. Heck*, 93 Wis. 2d 349, 355, 286 N.W.2d 831, 834 (1980); sec. 802.08, Stats. To address this contention, it is necessary to examine the elements of the "scope of employment" test established by *Cameron*.

The question submitted to the jury was whether Gille had been acting in the scope of his employment at the time he falsely imprisoned Desotelle. In so

they may be regarded as methods, even though quite improper ones, of carrying out the objectives of the employment."

*Id.* at 457, 307 N.W.2d at 168–69 (quoting W. Prosser, Handbook of the Law of Torts, sec. 70, at 460–61 (4th ed. 1971)).

doing, the court was asking the jury to determine whether Gille's conduct was a natural part of, and incidental to, the service contemplated. This was a disputed factual issue. Therefore, the trial court properly convened an advisory jury to determine whether Gille had been acting in the scope of his employment.

However, this does not end our inquiry. We must next examine the record to determine whether there is credible evidence to sustain the factual findings reached by the trier of fact. *Fehring*, 118 Wis. 2d at 305–06, 347 N.W.2d at 598; sec. 805.17(2), Stats.

The question as to whether Gille was acting within the scope of his employment must be determined by examining the inferences arising from the surrounding evidence because no direct evidence on this issue is reflected by the record. The trier of fact was aware of the circumstances surrounding the false imprisonment and its relationship to the sexual assault. Additionally, the county and Continental introduced evidence that Gille's conduct did not conform with that required and expected of a police officer. From this evidence, the trier of fact could have reasonably found that Gille's conduct was so extraordinary and disconnected from the type of services ordinarily contemplated that it was done outside the scope of his employment. Because the evidentiary basis for such a finding is reflected by the record, we sustain this determination.

Next, Desotelle argues that under the terms of Continental's insurance policy, Continental was required to indemnify Gille for the federal judgment. She argues that the plain language of the policy

extends liability coverage for damages arising from false imprisonment actions.

The construction of an insurance policy is a question of law. *Kozak*, 120 Wis. 2d at 466, 355 N.W.2d at 364. The objective in interpreting an insurance policy is to give effect to the parties' intentions. *Id.* Language of a policy is to be given the common and ordinary meaning it would have in the mind of a lay person. *Cieslewicz v. Mutual Service Casualty Ins. Co.*, 84 Wis. 2d 91, 97–98, 267 N.W.2d 595, 598 (1978). Continental's policy provides in part:

COVERAGE P-PERSONAL INJURY LIABILITY

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury ... sustained by any person or organization and arising out of one or more of the following offenses committed in the conduct of the named insured's business:

Group A—false arrest, detention or imprisonment, or malicious prosecution.

The plain meaning of the policy provides that before indemnification applies, the county must be legally obligated to pay the damages. The only source of the county's liability lies under the common law doctrine of *respondeat superior* or the provisions of sec. 895.46(1). Both liability theories require that Gille be found to have been acting within the scope of his employment before vicarious liability may be imposed upon the employer. *See Cameron*, 102 Wis. 2d at 456, 307 N.W.2d at 169. Because it has been determined that Gille was not acting within the scope of his

29

employment at the time the false imprisonment occurred, this requisite has not been met.

In addition, the policy requires that the offense be committed in the conduct of the named insured's business.[3] That issue has been determined adversely to Desotelle and is an unfulfilled condition of indemnification. Accordingly, we conclude that the plain language of the policy precludes entry of a judgment as a matter of law against Continental under the terms of its policy.[4]

*By the Court.*—Judgment affirmed.

---

[3]At oral argument, Desotelle's counsel acknowledged that the language of the policy, "conduct of the named insured's business," is to be construed to mean in the scope of employment.

[4]We also note that Continental would not be required to indemnify Gille under the "Additional Insured" provision of its insurance policy. That provision states:

### ADDITIONAL INSURED
#### (Employees)

It is agreed that the "Persons Insured" provision is amended to include any employee of the named insured *while acting within the scope of his duties as such* .... [Emphasis added.]

Because the jury determined that Gille was not acting within the scope of his employment, this provision does not apply.