URBAN and husband, Plaintiffs and Respondents, v. BADGER STATE MUTUAL CASUALTY COMPANY and others, Defendants and Respondents: CHARLES MAIER & SON COMPANY, Impleaded Defendant and Appellant.

BORMANN, Individually and as Administratrix, Plaintiff and Respondent, v. MOORE and others, Defendants and Respondents: CHARLES MAIER & SON COMPANY, Defendant and Appellant.

*Nos. 155, 156. Argued September 30, 1969.—Decided October 28, 1969.*

(Also reported in 171 N. W. 2d 422.)

356

For the defendant-appellant there was a brief by *Arnold, Murray & O'Neill* of Milwaukee, and oral argument by *James T. Murray.*

For the plaintiffs-respondents there was a brief by *Ray T. McCann* of Milwaukee, for Betty M. Urban and Earle H. Urban, and by *Dahms & Brewer* of Oconomowoc, for Betty L. Bormann, individually and as administratrix, attorneys, and *Leonard L. Loeb* of Milwaukee of counsel, and oral argument by *Mr. McCann* and *Mr. Hilbert W. Dahms.*

HANLEY, J.   Two issues are presented on this appeal:

(1) Did the trial court err in not holding as a matter of law that Moore's conduct was not actuated by a purpose to benefit his employer; and

(2) Did the trial court err in not holding as a matter of law that Moore's conduct occurred too far beyond the authorized time limits to be within the scope of his employment?

### Intent of Employee.

". . . In deciding a motion for summary judgment the court first examines the moving papers to see if the moving party has made a *prima facie* case for granting summary judgment. If he has, the court must then examine the opposing party's affidavits and other proof to determine whether the facts are shown which the court deems sufficient to entitle the opposing party to a trial." *Hyland Hall & Co. v. Madison Gas & Electric Co.* (1960), 11 Wis. 2d 238, 247, 248, 105 N. W. 2d 305.

In support of the motion the appellant relies upon the following undisputed facts which are contained in its affidavit:

(1) A shack had been provided for the temporary storage of materials such as those in question;

(2) Transportation of supplies was provided by special company trucks deployed for such purposes;

(3) Moore was to meet a friend after work and was thus anxious to leave work as quickly as possible; and

(4) It was more convenient to place the supplies in his trunk than to walk to the shack.

The appellant contends that these facts when applied to Restatement, 1 *Agency* 2d, p. 504, sec. 228 (2), present more than a prima facie case.  Sec. 228 (2) states:

"Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or *too*

*little actuated by a purpose to serve the master."* (Emphasis supplied.)

Relying upon *Strack v. Strack* (1961), 12 Wis. 2d 537, 107 N. W. 2d 632, it would have this court hold as a matter of law that Moore was acting solely for his own convenience and was therefore not acting within the scope of his employment.

To determine a question as a matter of law, the facts or reasonable inferences to be drawn therefrom must lead only to one conclusion as to each necessary ultimate fact. *Hardscrabble Ski Area v. First Nat. Bank* (1969), 42 Wis. 2d 334, 166 N. W. 2d 191.

The respondents correctly distinguish the *Strack Case, supra,* by indicating that there the employee's purpose and intent were not controverted. An examination of the affidavits opposing the motion for summary judgment reveals the following controverting testimony of Mr. Moore:

"*Q.* Now, were you carrying this dry-wall equipment and the powder dry wall back to the Charles Maier shop for their benefit? *A.* Well, yes.
"...
"*Q.* And why did you retain the bucket, the sponge, and the partial bag of dry wall?
"...
"*A.* Well, it was only a partial bag of dry wall, and I figured I could use that at another job some place. It was quicker for me. *It would just get thrown around in the hallway there and get wasted.* It was quicker for me to put that stuff in my car than it would be to walk way over to the shanty and put it into the shanty, that's all.
"...
"*Q.* Now, it was your intention to drive that material to your employer? *A.* Yes, sir." (Emphasis supplied.)

Restatement, 1 *Agency* 2d, p. 523, sec. 236, states:

"Conduct may be within the scope of employment, although done in part to serve the purposes of the servant or of a third person."

Relying on this principle the respondents contend that Moore may have been actuated at least in part by a purpose to serve his employer and that a question of fact is presented for the trier of fact.

If more than one conclusion can in fact be drawn as to Moore's intent, the determination was for the trier of fact, and the denial of the motion for summary judgment was proper.

The trial court determined that an issue of fact was presented:

". . . While there is other testimony in the adverse examination of Thomas J. Moore that would suggest that his placing the equipment of the Charles Maier & Son Company in his car was merely incidental to the purpose of his trip in which he was involved in the collision, nevertheless, the conflict in the testimony raises an issue of fact as to whether Thomas J. Moore was acting within the scope of his employment at the time of the collision."

*Unreasonable Time Extension.*

There is uncontroverted testimony that the main office and yard of the Charles Maier & Son Company closed at 5 p. m. The contention is made that at the time of the accident Moore was not subject to the control of his employer.

Restatement, 1 *Agency* 2d, p. 516, sec. 233, states:

"Conduct of a servant is within the scope of employment only during a period which has a reasonable connection with the authorized period."

". . . [Employment] begins only when the master has a right to direct the method by which the servant is to perform the work, and *terminates when the master has no longer a right to control it. . . .*" Restatement, 1 *Agency* 2d, p. 516, sec. 233, comment *a*. (Emphasis supplied.)

The Charles Maier & Son Company argues that since its office and yard close at 5 p. m. and the accident happened at 5:30 p. m., Moore could not return any of these items until the following morning. It is thus argued that the company could not and did not exercise any control over Moore's action.

Although both issues appear to be weighed in favor of Charles Maier & Son Company, recent decisions of this court indicate that trial courts possess wide latitude when considering motions for summary judgment. *Cranston v. Bluhm* (1969), 42 Wis. 2d 425, 167 N. W. 2d 236; *McConnell v. L. C. L. Transit Co.* (1969), 42 Wis. 2d 429, 167 N. W. 2d 226; and *Hardscrabble Ski Area v. First Nat. Bank, supra.*

In *Zimmer v. Daun* (1968), 40 Wis. 2d 627, 631, 162 N. W. 2d 626, the court stated:

"We think sec. 270.635, Stats., providing for summary judgment, does not confer a right to summary judgment but rather confers on the trial court a discretionary power to grant summary judgment when it believes summary disposition of a case is called for. . . ."

As stated in *Schuster v. Germantown Mut. Ins. Co.* (1968), 40 Wis. 2d 447, 452, 162 N. W. 2d 129:

". . . If the party opposing the motion for summary judgment submits sufficient facts which show there is a real controversy and takes the matter challenged by the motion out of the category of being a sham and unmeritorious suit or defense, that party is normally entitled to a trial on the merits. . . ."

Since summary judgment is not a matter of right and no abuse of the trial court's discretion has been shown, we affirm the trial court's order.

*By the Court.*—Order affirmed.