Scott, Plaintiff-Respondent, v. Min-Aqua Bats Water Ski Club, Inc., and another, Defendants-Appellants: Bahr, Defendant.

*No. 75–387. Submitted on briefs June 2, 1977.—*
*Decided July 1, 1977.*
(Also reported in 255 N. W. 2d 536.)

318

For the appellants the cause was submitted on the brief of *Peter S. Nelson* and *Fulton, Menn & Nehs Ltd.*, of Appleton.

For the respondent the cause was submitted on the brief of *Tinkham, Smith, Bliss, Patterson & Richards* of Wausau.

DAY, J. This is an appeal from a judgment finding insurance coverage. Specifically, the court found defendant St. Paul Fire and Marine Insurance Company had in effect a liability policy insuring the defendants Min-Aqua Bats Water Ski Club, Inc. ("club"), a nonprofit corporation, and Duncan Michael Bahr for liability arising out of this action, if such liability is ultimately found. The underlying action alleges that defendant Bahr, while acting in the scope of his employment for defendant club, negligently discharged a firearm injuring plaintiff Robert V. Scott.

The parties stipulated to the facts for the purpose of the decision on coverage.

On August 4, 1972 defendant Bahr was a member of the club, and also the Program Manager, which made him a member of the club's Board of Directors. Plaintiff Scott was a club member.

Mr. Scott had completed his participation in a water ski show which was being held that day and was changing into street clothes in the club house dressing room when the incident and injury occurred.

At the same time defendant Bahr was preparing to perform in his clown act which involved shooting a twelve gauge shot gun loaded with blanks.

The injury occurred when Mr. Bahr placed the muzzle of the gun under the dressing room door where Mr. Scott was standing, and discharged it, causing injury to Mr. Scott's foot. The parties stipulated that "no allegations have been made by plaintiff nor affirmative defenses raised by defendant or any of them that the injury was caused by an intentional act."

. The defendant insurer issued a general liability policy to defendant club, in force the date of the incident, which agreed to:

". . . pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of . . . bodily injury."

The policy covered the club's directors:

"If the Named Insured is designated in the Declarations as other than an individual, partnership or joint venture, the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of his duties as such."

An "exhibition endorsement" contained the following exclusion:

"1. This policy does not include, and the Company shall not be required to perform any service or make any payment, including immediate medical and surgical relief, on account of any bodily injury or death . . . cause (sic) by . . . acts that the Insured would perform in a ski show. . . ."

An additional exclusion is as follows:

". . . (T)he insurance does not apply to bodily injury to any person while practicing for or participating in any contest or exhibition of an athletic or sports nature sponsored by the named insured. . . ."

A review of the common law principles of agency and a reading of the contract of insurance make it clear the trial court correctly found coverage by the defendant insurer for the alleged negligence of defendant Bahr.

It is stipulated Bahr had the status of Program Manager of the club and that this position made him a member of the Board of Directors.

The doctrine of respondeat superior is found in *RESTATEMENT (SECOND) OF AGENCY* sec. 219(1) (1957).

"A master is subject to liability for the torts of his servants committed while acting in the scope of their employment."

In defining scope of employment this court has said,

" 'Not every act which an agent or servant may do while he is in the place appointed for the service, or during the time in which he is engaged in the performance, can be deemed to be within the course of the employment, or within the scope of the authority. The test lies deeper than that; it inheres in the relation which the act done bears to the employment. The act cannot be deemed to be within the course of the employment unless, upon looking at it, it can fairly be said to be a natural, not disconnected and not extraordinary, part or incident of the service contemplated.' " *Seidl v. Knop,* 174 Wis. 397,

400, 182 N.W. 980 (1921), cited in *Frew v. Dupons Construction Co.*, 37 Wis.2d 676, 685, 155 N.W.2d 595 (1968).

Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master. *RESTATEMENT OF AGENCY*, 2d sec. 228 (2) ; *Finsland v. Phillips Petroleum Co.*, 57 Wis.2d 267, 276, 204 N.W.2d 1 (1973) ; *Urban v. Badger State Mut. Co.*, 44 Wis.2d 354, 358–359, 171 N.W.2d 422 (1969) ; *Strack v. Strack,* 12 Wis.2d 537, 540, 107 N.W.2d 632 (1961).

"A servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the service is subject to the other's control or right of control." *RESTATEMENT OF AGENCY*, 2d, sec. 220 (1) ; *Heims v. Hanke,* 5 Wis.2d 465, 468, 93 N.W.2d 455 (1958).

Although the stipulated facts do not reveal whether Bahr was a paid employee, this was immaterial because "one volunteering service without any agreement for or expectation of reward may be a servant of the one accepting such services." *Heims v. Hanke, supra,* 5 Wis.2d at 468; *Galvan v. Peters,* 22 Wis.2d 598, 608, 126 N.W. 2d 590 (1964) ; *see, RESTATEMENT OF AGENCY,* 2d, sec. 225 Comment a.

The stipulation adequately establishes that Bahr was a servant of the club. It also establishes that he was "preparing to participate in his act." This was an act within the scope of his employment.

"Proof that the actor was in the general employment of the master does not of itself create an inference that a given act done by him was within the scope of employ-

ment. If, however, it is also proved that the act tended to accomplish an authorized purpose and was done at an authorized place and time, there is an inference that it was within the scope of employment." *RESTATEMENT OF AGENCY*, 2d, sec. 228 Comment b.

Bahr's preparation for his act was directly related to his employment as Program Director; it was a "natural, not disconnected and not extraordinary, part or incident of the service contemplated." *Seidl v. Knop, supra.*

The court, therefore, need not reach defendant insurer's more refined argument that Bahr was not acting within the scope of his employment as a director. It is enough to hold that he was a servant, the Club was his employer, and the employer was covered under the policy.

The final question is whether the exclusionary endorsements deny coverage. Defendant insurer argues Bahr was still engaged in the water ski show and therefore fell within the exhibition endorsement. But in the words of the stipulation, Bahr "was preparing to perform in his act when the incident occurred, but was not actually participating in the act at the time of the incident and injury to the plaintiff."

The insurer also argues that "Bahr's presence in the dressing room and his possession of the shot gun for use in the clown act . . . flowed from or had its origin in his coming participancy in the show." While this may be true, he was not then in the show and his preparation cannot be construed as within the compass of the risk which was excluded, i.e., participation in an athletic event or similar exhibition.

*By the Court.*—Judgment affirmed.