Joyce OLSON, f/k/a Joyce Leick, Plaintiff-
Respondent-Cross Respondent,

v.

Dr. Patrick CONNERLY, Defendant-Respondent-
Cross Appellant-Petitioner,

STATE of Wisconsin, Intervening Defendant-
Appellant.

Supreme Court

*No. 88–1444. Argued May 29, 1990.—Decided July 6, 1990.*

(Also reported in 457 N.W.2d 479.)

For the defendant-respondent-cross appellant-petitioner there were briefs by *Eric J. Wahl* and *Wiley, Rasmus, Wahl, Colbert, Norseng and Cray, S.C.,* Eau Claire and oral argument by *Eric J. Wahl.*

For the intervening defendant-appellant the cause was argued by *David T. Flanagan,* assistant attorney general, with whom on the brief was *Donald J. Hanaway,* attorney general.

CALLOW, WILLIAM G., J. This is a review of a published decision of the court of appeals, *Olson v. Connerly,* 151 Wis. 2d 663, 445 N.W.2d 706 (Ct. App. 1989), which reversed in part a judgment of the Circuit Court for Eau Claire county, Judge Gregory A. Peterson. The issue presented is as follows: In determining whether an employee was acting within the scope of his or her employment, is it essential, under Wisconsin law, to consider whether the employee's conduct was actuated by a purpose to serve the employer? We conclude that, in resolving scope of employment questions, consideration must be given to whether the employee was actuated, at least in part, by a purpose to serve his or her employer. Accordingly, we affirm the decision of the court of appeals.

We begin by setting forth the facts and the procedural posture of this case. The Eau Claire Family Medicine Clinic (the Clinic), a health-care clinic, is an educational device of the University of Wisconsin Medical School. Dr. Patrick Connerly, a physician, was appointed to the faculty of the University of Wisconsin Medical School in 1979. He was assigned to the Clinic, where his initial responsibilities were to provide care to patients and to teach resident physicians. Joyce Olson became a medical assistant at the Clinic in 1981.

Olson began working as a medical assistant for Connerly in 1981, assisting him in the treatment of his patients. Connerly became Olson's regular physician in 1981, and over the years he treated her for a variety of ordinary medical problems.

In 1983, Olson began seeing an independent mental health therapist on a weekly basis to receive counseling for various personal problems,[1] but she subsequently encountered difficulties maintaining insurance coverage for the sessions. Thereafter, Olson continued to see the independent therapist less frequently and at her own expense, and Connerly began providing counseling to her between her sessions with the independent therapist. Olson's medical records from the Clinic show that Connerly provided counseling to Olson on several occasions in early 1985 for personal problems she was experiencing.

During the spring of 1985, Olson and Connerly began spending more time together. They saw each other more often at work. They sometimes ate lunch together in a city park located near the Clinic. They also participated in an exercise program at the Clinic. On these occasions they discussed various topics, including books, Olson's problems, and Connerly's job-related concerns. Olson testified at trial that she considered these encounters to be instances of counseling; Connerly testified that their discussions were merely matters of personal friendship.

In addition to seeing each other at the Clinic, there were four or five instances of sexual contact between Olson and Connerly at Olson's home in mid-1985. On one of these occasions, they engaged in sexual intercourse. Olson testified at trial that she believed that Connerly intended these instances of sexual contact to be therapeutic, but there is no evidence that Connerly represented that the sexual contact was intended to be

---

[1]Olson has a long history of receiving counseling for problems stemming from alcohol and chemical dependency, being sexually abused and raped as a child, depression, and her marriage.

medical care. Connerly testified that he did not intend the instances of sexual contact to be medical care.[2] Connerly also testified that, in late May or early June of 1985, he began to feel that he was falling in love with Olson. Several physicians testified that a reasonable physician would not consider sexual contact to be part of medical care. Conflicting testimony was presented at trial as to whether Olson sustained Post-Traumatic Stress Disorder as a result of the sexual contact.

In late August 1985, Olson filed a sexual harassment complaint against Connerly, and an investigation commenced immediately. University representatives concluded that there was substance to the allegations; Connerly resigned from his position shortly thereafter.

Olson started the present action against Connerly approximately one year later. The Clinic, University of Wisconsin Hospitals, and the State of Wisconsin were initially named as defendants, but were subsequently dismissed by a stipulation and order filed June 18, 1987. The Attorney General maintained that the acts complained of were not within the scope of Connerly's employment. The Attorney General thus refused to defend Connerly, but appeared at trial to contest the scope of employment issue. When a dispute arises as to whether a public officer or employee was acting within the scope of his or her employment, sec. 895.46(1)(a), Stats., allows the Attorney General to appear in the

---

[2]Connerly and Olson provided different explanations regarding why many of their encounters in Clinic-related settings and all of their encounters at Olson's home do not appear in Olson's medical records. Olson testified that the encounters were not recorded because she wanted to prevent the Clinic employees who handled patient records from learning about the nature of their discussions. Connerly testified that he did not record these encounters because they involved nonmedical matters.

action to contest that issue. Section 895.46(1)(a) makes state and political subdivisions responsible for the damages and costs resulting from the conduct of their public officers and employees if the court or jury determines that the conduct was within the scope of employment.[3]

Before the case went to the jury, the jury was instructed on a number of matters, including the scope of employment matter. The scope of employment instruction directed the jury to consider, among other things, whether Connerly was actuated by a purpose to serve his employer or whether he had stepped aside from his employer's business to accomplish an independent purpose of his own.[4] Both Connerly and Olson objected

---

[3]Section 895.46(1)(a), Stats., provides, in part, as follows:

If the defendant in any action or special proceeding is a public officer or employe and is proceeded against in an official capacity or is proceeded against as an individual because of acts committed while carrying out duties as an officer or employe and the jury or the court finds that the defendant was acting within the scope of employment, the judgment as to damages and costs entered against the officer or employe in excess of any insurance applicable to the officer or employe shall be paid by the state or political subdivision of which the defendant is an officer or employe. Agents of any department of the state shall be covered by this section while acting within the scope of their agency. Regardless of the results of the litigation the governmental unit, if it does not provide legal counsel to the defendant officer or employe, shall pay reasonable attorney fees and costs of defending the action, unless it is found by the court or jury that the defendant officer or employe did not act within the scope of employment. If the employing state agency or the attorney general denies that the state officer, employe or agent was doing any act growing out of or committed in the course of the discharge of his or her duties, the attorney general may appear on behalf of the state to contest that issue without waiving the state's sovereign immunity to suit.

[4]The jury was instructed on scope of employment, in part, as follows:

A person is within the scope of his employment when he is perform-

to this instruction, arguing that requiring the jury to consider Connerly's intent was inconsistent with the law of Wisconsin.

The jury determined that the sexual contact between Connerly and Olson was part of Connerly's treatment of Olson, that such treatment was negligent, and that the negligent treatment caused Olson injury. The jury further determined that Olson was negligent with respect to her relationship with Connerly and that her negligence contributed to her injuries. The jury awarded her damages in the amount of $46,500. The jury finally determined that Connerly was not acting within the scope of his employment at the Clinic when he negligently caused injury to Olson.[5]

In post-trial proceedings, Connerly moved the circuit court for an order ruling that he was within the scope of his employment when he caused injury to Olson. At the hearing on this post-trial motion, the circuit court concluded that, with respect to the scope of employment question, it was erroneous to instruct the jury to consider whether Connerly was actuated by a purpose to serve his employer. The circuit court determined that recent scope of employment cases showed that the employee's intent was no longer a factor to consider. Under what the circuit court perceived to be

---

ing work or rendering services he was engaged to perform and render within the time and space limits of his authority, and is actuated by a purpose to serve his employer in doing what he is doing. The test is whether the person has stepped aside from the business of his employer to accomplish an independent purpose of his own, or whether he was actuated by an intent to carry out his employment and to serve his employer.

[5]Had the jury concluded that the instances of sexual contact were not part of Connerly's treatment, the jury was precluded from answering the other special verdict questions, except for the damages question.

the proper scope of employment test, it ruled that, in light of the jury's answers to the other special verdict questions, Connerly was within the scope of his employment as a matter of law and entered judgment accordingly. Because the circuit court concluded that Connerly was within the scope of his employment when he negligently caused injury to Olson, the State was required, under sec. 895.46(1)(a), Stats., to indemnify Connerly for the full amount of damages awarded to Olson and for his reasonable attorney fees and costs.

The State appealed, and the court of appeals (with one judge dissenting) reversed that portion of the circuit court's judgment requiring the State to indemnify Connerly for the damages awarded to Olson and for his attorney fees and costs.[6] After examining the relevant cases, the court of appeals concluded that whether the employee was actuated by a purpose to serve the employer is a necessary consideration in scope of employment cases and that the scope of employment instruction was correct. *Olson*, 151 Wis. 2d at 670–74. The court of appeals also concluded that the verdict was not inconsistent in finding that Connerly's sexual contact was medical treatment but that the medical treatment was outside the scope of his employment. *Id.* at 674–77. The dissenter disagreed with the majority on the scope of employment issue, concluding that the State could be found liable for Connerly's misconduct under

---

[6]Connerly cross-appealed the circuit court's denial of his post-trial motion that sought a ruling that Olson failed to present any physical injury with which to support her claim of negligent infliction of emotional distress. The court of appeals affirmed the circuit court on this issue (*Olson*, 151 Wis. 2d at 678–79), and it is not before this court.

Restatement (Second) of Agency, sec. 219(2)(d)(1958).[7]
*Id.* at 679–85 (Myse, J. dissenting).

In this court, Connerly seeks a ruling that he was within the scope of his employment when he negligently caused injury to Olson and that therefore the State is responsible, under sec. 895.46(1)(a), Stats., for the damages and costs entered against him and his reasonable attorney fees. Connerly argues that the circuit court erred when it included a separate special verdict question on scope of employment because the question regarding whether the sexual contact was treatment resolved the scope of employment issue.[8] Connerly also argues that the circuit court erred in giving the jury a scope of employment instruction that required consideration of his intent. According to Connerly, it was proper for the circuit court to remedy its error by changing the answer to the special verdict question concerning scope of employment, thereby finding that he was within the scope of his employment as a physician. Moreover, citing Restatement (Second) of Agency, sec. 219(2)(d)(1958), Connerly urges this court to rule that, if the agency relationship assisted the employee in accomplishing the tort, then the employer is liable for the employee's actions. Social policy considerations require such a ruling, according to Connerly.

---

[7]Restatement (Second) of Agency, sec. 219(2)(d) (1958) provides, in part, as follows:

> (2) A master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless:
>
> . . ..
>
> (d) the servant . . . was aided in accomplishing the tort by the existence of the agency relation.

[8]No objection was made at trial to the submission of the scope of employment verdict question to the jury.

The State, on the other hand, argues that it is well established in Wisconsin that it is proper to instruct the jury in scope of employment cases to consider whether the employee was actuated by a purpose to serve the employer. The State notes that allowing the jury to consider employee intent is consistent with the principles of the common law of agency. According to the State, the instruction given at the trial was correct in light of Wisconsin law. Even if the circuit court was incorrect in instructing the jury to consider Connerly's intent, the State contends that the circuit court should have ordered a new trial instead of changing the answer to the scope of employment special verdict question.

We agree with the State that the employee's intent is a factor to consider when a scope of employment question arises under sec. 895.46, Stats. This court has had many occasions to discuss the factors to consider in resolving scope of employment issues, most often when there was no issue of indemnification under sec. 895.46. Nevertheless, it is proper to look to scope of employment cases arising outside the context of sec. 895.46 in defining the term "scope of employment" as it is used in sec. 895.46. *See Cameron v. Milwaukee,* 102 Wis. 2d 448, 456–57, 307 N.W.2d 164 (1981).[9] The scope of employment cases of this court have always deemed significant

[9]When the provision at issue here was enacted, it afforded coverage to the public officer when it was found that he or she had "acted in good faith." 1943 Laws of Wisconsin, ch. 377. In 1973, the good faith language was omitted, and coverage was afforded to the public officer when it was found that he or she was "acting within the scope of his [or her] employment." 1973 Laws of Wisconsin, ch. 333 sec. 173p. By this change, the legislature made the scope of employment test determinative in cases arising under this provision, but we note that the scope of employment test embraces the concept of good faith. See *infra* pp. 499–500.

the employee's intent at the time the acts in question were committed.

The case of *Finsland v. Phillips Petroleum Co.,* 57 Wis. 2d 267, 204 N.W.2d 1 (1973), serves as an example. In *Finsland,* the manager of a Phillips 66 service station was the driver of an automobile that struck a child. On the day of the accident, the manager left the service station in his automobile in furtherance of a work-related duty, but had altered his course to undertake a personal matter when the accident occurred. *Finsland,* 57 Wis. 2d at 269–70, 272. An action was commenced against the manager's employer, Phillips Petroleum Company, alleging that the manager was within the scope of his employment at the time of the accident. *Id.* at 268.

The trial court granted summary judgment in the company's favor, concluding that the manager was not within the scope of his employment at the time of the accident. This court affirmed and stated the controlling factors in scope of employment cases:

> "Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, *or too little actuated by a purpose to serve the master.*"

*Id.* at 276 (quoting Restatement (Second) of Agency, sec. 228(2)(1958)) (emphasis added).[10] The scope of employ-

---

[10]Section 228 of the Restatement (Second) of Agency (1958) provides as follows:

(1) Conduct of a servant is within the scope of employment if, but only if:
 (a) it is of the kind he is employed to perform;
 (b) it occurs substantially within the authorized time and space limits;

ment cases of this court have been consistent in requiring consideration of the employee's intent. *See, e.g., Scott v. Min-Aqua Bats Water Ski Club,* 79 Wis. 2d 316, 321, 255 N.W.2d 536 (1977); *Bituminous Cas. Corp. v. United Military Supply,* 69 Wis. 2d 426, 433-34, 230 N.W.2d 764 (1975); *Wuorinen v. State Farm Mut. Auto Ins. Co.,* 56 Wis. 2d 44, 54, 201 N.W.2d 521 (1972); *Urban v. Badger State Mut. Casualty Co.,* 44 Wis. 2d 354, 358-59, 171 N.W.2d 422 (1969); *Strack v. Strack,* 12 Wis. 2d 537, 540-41, 107 N.W.2d 632 (1961); *Linden v. City Car Co.,* 239 Wis. 236, 239, 300 N.W. 925 (1941); *Mittleman v. Nash Sales, Inc.,* 202 Wis. 577, 580, 232 N.W. 527 (1930); *Eckel v. Richter,* 191 Wis. 409, 412-13, 211 N.W. 158 (1926); *Kleeman v. Chicago & N.W.R. Co.,* 186 Wis. 482, 484, 202 N.W. 295 (1925); *Thomas v. Lockwood Oil Co.,* 174 Wis. 486, 492, 182 N.W. 841 (1921); *Seidl v. Knop,* 174 Wis. 397, 399-400, 182 N.W. 980 (1921).

These cases, which require consideration of the employee's intent in resolving scope of employment questions, show that an employee may be found to have acted within the scope of his or her employment as long as the employee was at least partially actuated by a purpose to serve the employer. There is no requirement that serving the employer must be the employee's only purpose or even the employee's primary purpose. Rather, an employee's conduct is not within the scope of his or her

(c) it is actuated, at least in part, by a purpose to serve the master, and

(d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

employment if it is too little actuated by a purpose to serve the employer or if it is motivated entirely by the employee's own purposes (that is, the employee stepped aside from the prosecution of the employer's business to accomplish an independent purpose of his or her own). *See* Restatement (Second) of Agency, sec. 228(2)(1958); Wis. JI–4035 (1966).[11] Requiring that the employee's conduct must be at least partially actuated by a purpose to serve the employer is consistent with the legislative intent behind sec. 895.46, Stats. This court has noted previously that "the intent of [sec. 895.46]—an intent which has been reiterated and amplified by the legislature—was to protect public officials who were proceeded against in their official capacities and who acted in good faith." *Schroeder v. Schoessow,* 108 Wis. 2d 49, 68, 321 N.W.2d 131 (1982).[12]

In light of the foregoing discussion, we hold that, in scope of employment cases, consideration must be given to whether the employee was actuated, at least in part, by a purpose to serve the employer. It was therefore correct for the circuit court to instruct the jury to con-

---

[11]*See also* Restatement (Second) of Agency sec. 235, Comment a (1958) ("Conduct is within the scope of employment only if the servant is actuated *to some extent* by an intent to serve his master.") (emphasis added); Restatement (Second) of Agency sec. 236, Comment b (1958) ("The fact that the predominant motive of the servant is to benefit himself or a third person does not prevent the act from being within the scope of employment. If the purpose of serving the master's business actuates the servant *to any appreciable extent,* the master is subject to liability if the act otherwise is within the service . . ..") (emphasis added).

[12]*Schroeder* also properly recognized that "[t]his court has uniformly followed a broad interpretation of the protection afforded by [sec. 895.46, Stats.]." *Schroeder,* 108 Wis. 2d at 68.

sider whether Connerly was actuated by an intent to serve his employer or whether he had stepped aside from his employer's business to achieve an independent purpose of his own. There is no claim that the instruction was defective in any other respect, and we agree with the conclusion of the court of appeals that the jury verdict was not inconsistent and that there is credible evidence to support the jury verdict.[13]

---

[13]We reject Connerly's contention that we must apply Restatement (Second) of Agency, sec. 219(2)(d) (1958)—which, again, states in part that a master is liable for a tort of a servant acting outside the scope of his or her employment if he or she "was aided in accomplishing the tort by the existence of the agency relation"—in order to reconcile *Himba v. Odegaard,* 769 F.2d 1147 (7th Cir. 1985), *Bell v. City of Milwaukee,* 536 F. Supp. 462 (E.D. Wis. 1982), and *Cameron* with the cases mentioning the employee's intent as a factor. Section 219(2) deals with occasions where the employee is acting outside the scope of employment; sec. 895.46, Stats., creates a right of indemnification where the employee acts within the scope of employment. The discussion of scope of employment in *Cameron* "was not an attempt to set forth a definitive standard under which to determine whether an employee was acting within the scope of [ ] employment." *Desotelle v. Continental Cas. Co.,* 136 Wis. 2d 13, 26 n.2, 400 N.W.2d 524 (Ct. App. 1986). *Bell* and *Himba* appear to disregard the intent of the public officer, holding instead that sec. 895.46 may apply as long as the public officer's actions were designed to further the objectives of employment. As the court of appeals noted in this case, neither case elaborates on the difference between "intending to serve the employer" and "furthering the objectives of employment." *Olson,* 151 Wis. 2d at 674. To the extent those cases eliminate the employee's intent as a factor, they are inconsistent with what we have said here and are thus incorrect under Wisconsin law.

*By the Court.*—The decision of the court of appeals is affirmed.