In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 17-3216 & 18-1060

SHONDA MARTIN,

*Plaintiff-Appellee,*

*v.*

MILWAUKEE COUNTY,

*Defendant-Appellant.*

Appeals from the United States District Court for the
Eastern District of Wisconsin.
No. 2:14-CV-200 — **J.P. Stadtmueller**, *Judge.*

ARGUED MAY 24, 2018 — DECIDED SEPTEMBER 14, 2018

Before MANION and BARRETT, *Circuit Judges*, and
GETTLEMAN, *District Judge*.[*]

MANION, *Circuit Judge*. Milwaukee County ("County")
hired Xavier Thicklen in late 2012 to work as a corrections
officer in its jail. County has a zero-tolerance policy
forbidding corrections officers from having any sexual

* Of the United States District Court for the Northern District of
Illinois, sitting by designation.

contact with inmates. County repeatedly instructed Thicklen not to engage in any such contact and trained him to avoid it. Thicklen gave answers to quizzes indicating he understood the training. But he raped Shonda Martin in jail anyway.

Martin sued him, and sued County for indemnification under Wisconsin Statute § 895.46. Before, during, and after trial, County sought judgment as a matter of law that the assaults were outside the scope of employment and not susceptible to statutory indemnification. But the district court allowed a jury to decide the scope issue and allowed the $6,700,000 award to stand against County via the jury's finding that the assaults were in the scope. County appeals.

## I. Facts[1]

### A. Thicklen's training

Thicklen worked as a corrections officer (a/k/a "guard") at the Milwaukee County Jail. County instructed him never to have sex with inmates under any circumstances. County told him an inmate's apparent consent was irrelevant; inmate consent is impossible given the power imbalance. Milwaukee County Deputy Inspector James Cox testified corrections officers are instructed that: 1) sexual contact with an inmate violates state law; 2) there is no such thing as a consensual relationship between an officer and an inmate; 3) the Sheriff's Office mission opposes officers having sexual contact with

---

[1] We present the facts in the light most favorable to Martin and the jury's verdict. *Thorne v. Member Select Ins. Co.*, 882 F.3d 642, 644 (7th Cir. 2018). All quotes in this section are from the trial transcript, unless otherwise indicated.

inmates; and 4) the Sheriff's Office will investigate violations and prosecute and terminate violators.

Deputy Anne Varick, who worked as a guard at the jail before Thicklen sexually assaulted Martin, testified inmates had to obey guards or face discipline, but no part of her duties allowed her to have any sexual contact with an inmate or to fabricate reasons to move an inmate. She testified no part of her training permitted sex as a response to an inmate, or the use of force as a means to obtain sex from an inmate.

Edward Bailey, a County representative in supervisory ranks before retiring, told the jury sexual contact between a corrections officer and an inmate is a heinous crime and an abdication of law enforcement's powers. He testified corrections officers received clear training against it. He testified about training guides Thicklen would have received and explained they detailed the criminality of staff having sexual contact with inmates and the irrelevancy of apparent consent. Corrections officers were trained not to have any sexual contact with inmates under any circumstances, regardless of consent. They were trained such contact is criminal, unethical, unprofessional, unexcusable, and unjustifiable. Bailey testified County has a zero-tolerance policy regarding such sexual contact. He also testified he would meet with all corrections officers on their graduation days and present real-life examples of officers who engaged in unethical and criminal conduct, including sexual contact. Bailey testified he would have had this conversation with Thicklen. Bailey also testified Thicklen's quiz answers demonstrated his understanding that 1) consent is not a defense to sexual misconduct; 2) if an inmate "comes on" to an officer he should tell the inmate the behavior is

inappropriate, discipline the inmate, and report the incident to a supervisor; and 3) if a staff member becomes romantically involved with an inmate he should tell a supervisor of the problem and the need for assistance. Bailey testified Thicklen completed the training about sex. At trial, Martin did not contest Thicklen received this training or gave these answers.

Bailey told the jury the sexual assaults violated Wisconsin law; Thicklen's oath and training; the Sheriff's Office's goals and policies; and County's rules, regulations, and policies. Bailey's testimony was blunt: Thicklen "was retained and employed by Milwaukee County to provide public safety. To work within our jail in the pursuit of justice. And, in fact, he went inside the Milwaukee County jail and perpetrated heinous crimes. That was not work that he was retained to do." Bailey said Thicklen was not rendering services County hired him to perform when he committed these crimes.

### B. Martin's incarceration

Martin arrived at the jail in February 2013 at the age of 19. She soon learned she was pregnant. She testified she could not control her activities or movements in jail; the guards did. Thicklen raped Martin in jail. He had sexual contact with her three times while she was pregnant, including vaginal intercourse, and two times after delivery. Regarding the first sexual assault, Martin testified that on April 12, 2013, Thicklen came to her housing pod and said she had a medical appointment. By then, County had employed Thicklen for approximately six months. He took her and three other female inmates to the jail clinic. He put her alone in a cell near the clinic and put the other three together in an adjacent cell. He returned to Martin's temporary cell and sexually assaulted her. She was shocked. She testified she "kind of led it on."

On July 11, 2013, a jail staff member told her she had an attorney visit. Thicklen took her to an attorney booth. He told her "we're f*ckin'" and sexually assaulted her. She testified she did "[n]ot really" want to engage in that sexual encounter, but she "didn't dispute it … ." No attorney appeared in the booth. Martin assumed the "attorney visit" was fake. At least after the second sexual encounter with Thicklen, Martin definitively did not want to have any further encounters with him. But she could not avoid him.

On September 7, 2013, Thicklen took her to an attorney booth for another "attorney visit" that did not happen. He told her again "we're f*ckin'." She said, "absolutely not. Please. I can't. I'm sick. I'm not feeling well. Don't want to do this. I don't want to have anything to do with you." He told her he was in gray and she was in blue, and his co-workers would believe him and not her. Corrections officers wore gray. Inmates wore blue. She understood him to mean "he's in authority and … he has power over me." She understood him to mean his co-workers would believe anything he said; he could falsely say she tried to grab or hit him, or tried to take his taser or gun, and she would be punished. She was worried about "max status": isolation for 23 hours a day on nutraloaf, which is like "dog food."[2] She testified, "I believed everything he said. … I knew that his authority over me would trump anything that I said." He ordered her to get on the table. She did not think she could say no. He vaginally raped her. She was scared, mad, and confused. The rape caused her to bleed. She entered preterm labor and had to go to the hospital. Fear stopped her from reporting. The hospital

---

[2] *See Prude v. Clarke*, 675 F.3d 732, 733 (7th Cir. 2012) ("Nutriloaf … is a bad-tasting food given to prisoners as a form of punishment … .").

stopped the bleeding and contractions. She returned to jail that night. About a month later, on October 4, 2013, Martin went into labor and returned to the hospital. She was shackled by her leg and wrist throughout virtually her entire hospitalization, even during most of the delivery process. The child was born in good health. Martin had to leave her baby with family and return to jail on October 6, 2013.

Four days after delivery, Thicklen sexually assaulted Martin a fourth time in her room in the jail infirmary. She felt violated and sick. She did not feel she could stop it. On November 15, 2013, he took her to a holding cell near the medical clinic. He sexually assaulted her a fifth time. She did not see any medical professional on that occasion.

Martin testified that during each sexual assault, Thicklen was in uniform, armed, and on duty working for County. All five assaults occurred in jail. Every time, he had to use his keys, power, and authority. He told her he would be fired if people found out. He took steps to hide the assaults. For example, he assaulted her off camera. Finally, on December 3, 2013, she reported the sexual assaults when she was concerned he possibly gave her a disease which spread to her child. An investigation began that day. She was transferred the next day. Thicklen was dismissed and prosecuted.

## II. Procedural Posture

Martin sued Thicklen and County. Count I asserted a claim under 42 U.S.C. § 1983 for violation of the Fourteenth Amendment's due process clause, arising out of the sexual assaults. Count II asserted a claim arising out of the shackling during delivery. Count III brought a claim for failure to intervene. Count IV brought a claim against County for

indemnification under Wisconsin Statute § 895.46 for the sexual assaults. County moved for summary judgment on Counts I, III, and IV. County argued, among other things, that as a matter of law Martin could not establish Thicklen was acting within the scope of employment when he sexually assaulted her. The district court granted summary judgment to County on Counts I and III but denied summary judgment on Count IV, concluding material issues of fact existed about whether Thicklen was acting within the scope of his employment when he sexually assaulted Martin. County sought—but the district court denied—leave immediately to appeal the denial of summary judgment on indemnification.

The case went to jury trial. Thicklen did not appear. Martin's only claim against him at trial was her § 1983 claim for the sexual assaults. Her only surviving claims against County at trial were her claim for indemnification under § 895.46 regarding the sexual assaults and her § 1983 claim for shackling during delivery. County moved for judgment as a matter of law pursuant to Rule 50(a) during trial but the court allowed the case to go to the jury, which returned a verdict in favor of Martin on her § 1983 claim against Thicklen and on her indemnification claim against County. The jury awarded $1,700,000 in compensation and $5,000,000 in punitive damages. The jury returned a verdict in favor of County on the shackling claim, which Martin does not appeal.

County renewed its motion for judgment as a matter of law pursuant to Rule 50(b) and moved for a new trial pursuant to Rule 59. County argued that Martin failed as a matter of law to establish Thicklen was acting within the scope of his employment, that the verdict in Martin's favor on this issue was against the manifest weight of the evidence,

and that the court erred in instructing the jury on scope of employment. The court denied that motion. County appeals under No. 17-3216 and raises two issues. County argues it is entitled to judgment as a matter of law on the indemnification claim. Alternatively, County argues it is entitled to a new trial on the indemnification claim because the jury's verdict is against the manifest weight of the evidence and the court erred in instructing the jury.

And now, another surprise. County also filed a second post-verdict motion seeking a new trial or relief from the judgment based on newly discovered evidence that Martin and Ivan Boyd (the father of her child) framed Thicklen, and the sexual assaults never happened. The court denied that motion. County appeals under No. 18-1060 and argues it is entitled to a new trial or relief from the judgment. The two appeals (17-3216 and 18-1060) are consolidated.

### III. Discussion

*A. Standard of review*

County tried and failed several times to take the issue of whether Thicklen sexually assaulted Martin in the scope of his employment away from the jury. We review the denial of a Rule 50 motion for judgment as a matter of law *de novo*. *Thorne*, 882 F.3d at 644. We consider "whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in the light most favorable to the party against whom the motion is directed." *Lane v. Hardee's Food Sys., Inc.*, 184 F.3d 705, 707 (7th Cir. 1999). "Judgment as a matter of law is proper if 'a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that

issue.'" *Lawson v. Sun Microsystems, Inc.*, 791 F.3d 754, 761 (7th Cir. 2015) (quoting Fed. R. Civ. P. 50(a)(1)). Without assessing credibility or weighing evidence, we construe the evidence in favor of the party who won before the jury. *Thorne*, 882 F.3d at 644. But a verdict supported by no evidence or a mere scintilla of evidence will not stand. *Id.*

## B. Scope of employment for statutory indemnification

### 1. Wisconsin Statute § 895.46

County argues Martin failed as a matter of law to establish Thicklen sexually assaulted her within the scope of employment. It argues no reasonable jury could find he was within the scope when he sexually assaulted her because it did not employ him to perform that kind of conduct and because the assaults were not actuated by a purpose to serve it. It seeks judgment as a matter of law on her indemnification claim under Wisconsin Statute § 895.46, which states:

> If the defendant in any action or special proceeding is a public officer or employee and is proceeded against in an official capacity or is proceeded against as an individual because of acts committed while carrying out duties as an officer or employee and the jury or the court finds that the defendant was acting within the scope of employment, the judgment as to damages and costs entered against the officer or employee … in excess of any insurance applicable to the officer or employee shall be paid by the state or political subdivision of which the defendant is an officer or employee.

Wis. Stat. § 895.46(1)(a). At trial, Martin's only claim against County based on Thicklen's conduct stemmed from this statute; she sought indemnification at trial on no other ground, and the district court had granted County summary judgment on her other claims against it arising from the sexual assaults. Wisconsin law controls the issue of whether the sexual assaults were in the scope of employment. *See Hibma v. Odegaard*, 769 F.2d 1147, 1152 (7th Cir. 1985). The district court recognized this. It determined relevant cases conflicted. But the district court did not follow what it thought the Wisconsin Supreme Court would do—as required, *In re: Zimmer, Nexgen Knee Implant Prods. Liab. Litig.*, 884 F.3d 746, 751 (7th Cir. 2018) (recognizing that when interpreting state law, a federal court must determine how the state's highest court would rule). Instead, the district court decided to follow the case with the most closely analogous facts,[3] which it determined to be *Estate of Watts v. Heine*, No. 07-CV-644, 2008

---

[3] The court gave no citation for the idea that if state law is unsettled it should follow any case with the closest facts. But even such a rule would point to *J.K.J. v. Polk County Sheriff's Department*. There, a court issued a decision three days before the summary judgment decision in the case before us. *J.K.J.* involved facts arguably much closer to our case. *J.K.J.* held no reasonable jury could infer a jailer's sexual assaults (including intercourse) of a detainee were intended for a legitimate purpose. *J.K.J.*, No. 15-cv-428-wmc, 2016 WL 6956662, at *4 (W.D. Wis. Nov. 28, 2016). So he was outside the scope. Although that decision involved insurance and not § 895.46, the same scope analysis obtains. Indeed, in a later decision in the same case the court held the § 895.46 indemnification claim failed as a matter of law because the jailer was outside the scope. *J.K.J. v. Polk Cty.*, No. 15-cv-428-wmc, 2017 WL 28093, at *13 (W.D. Wis. Jan. 1, 2017). We do not fault the court here for not following *J.K.J.* as precedent (it wasn't binding) or for not following *J.K.J.* as having the closest facts (that isn't the rule). The quest is to follow what the Wisconsin Supreme Court would do.

WL 4058032 (E.D. Wis. Aug. 26, 2008),[4] one of its own decisions.[5]

---

[4] *Estate of Watts* involved sexual assault in the Milwaukee County Jail but does not control. Besides being a decision by a federal district court, not the Wisconsin Supreme Court, there are other concerns. One, that case concludes: "A reasonable trier of fact could find that Heine's sexual misconduct was not wholly disconnected from the scope of his employment." *Estate of Watts*, 2008 WL 4058032, at *4. But the Wisconsin Supreme Court has not used "not wholly disconnected" as a test for § 895.46 scope. Concluding an act is wholly disconnected from employment removes it from scope. *See Seidl v. Knop*, 182 N.W. 980, 981 (Wis. 1921) ("the arrangement … was a wholly disconnected act of Reese's employment"). But concluding an act is *not* wholly disconnected from employment is insufficient to put the act in scope. Such a bare conclusion does not, for example, consider intent. *J.K.J.* criticized *Estate of Watts* for that. *J.K.J.*, 2016 WL 6956662, at *5 ("To the extent the court in *Estate of Watts* focused on the deputy sheriff's position, rather than his intent, its holding appears inconsistent with the Wisconsin Supreme Court's decision in *Olson*, which expressly disavows cases that 'eliminate the employee's intent as a factor' in a scope of agency analysis, because 'they are inconsistent with what we have said here and are thus incorrect under Wisconsin law.'"). Two, *Estate of Watts* also concludes: "A jury could conclude that his supervision of and interaction with inmates … was part of his job and the sexual assault was only made possible by virtue of his status as a deputy sheriff." *Estate of Watts*, 2008 WL 4058032, at *4. Of course supervision and interaction were parts of the job. Plaintiff did not sue for that. And the "made possible" theory is insufficient. *J.K.J.*, 2016 WL 6956662, at *5–6; *see S.V. v. Kratz*, No. 10-C-0919, 2012 WL 5833185, at *6 (E.D. Wis. Nov. 16, 2012) ("[I]t is irrelevant that the opportunity … arose as a result of his position … ."); *see also Gallun v. Soccer U.S.A., Inc.*, 516 N.W.2d 789, 1994 WL 133053, at *3 (Wis. Ct. App. 1994) ("The fact that Nelson's conduct occurred within the time and space of his employment, and the fact that without his employment he would not had the opportunity … are inadequate to carry the conduct within the scope of employment.").

[5] We are reviewing the court's denial of County's motion for judgment as a matter of law under Rule 50, not the denial of the motion for summary

To the contrary, we find Wisconsin law sufficiently clear.

### 2. Wisconsin Supreme Court precedent

A leading case is *Cameron v. City of Milwaukee*, 307 N.W.2d 164 (Wis. 1981). There, two "off duty" police officers cruised through Milwaukee in the early morning hours in civilian clothes. They challenged and fought with a group from another car, leading to the arrest of that group. A federal district court concluded the police officers violated the constitutional rights of the occupants of the other car. The police officers sued the City for § 895.46 indemnification, arguing their conduct was in the scope. The state trial court granted summary judgment for the City, and the appellate court affirmed.

But the Wisconsin Supreme Court reversed. It held "color of law" for 42 U.S.C. § 1983 purposes is not identical to "scope of employment" for Wisconsin Statute § 895.46 purposes. Color is broader than scope. Observing "scope of employment" comes from *respondeat superior*, the court harked back to its decisions in *Scott v. Min-Aqua Bats Water Ski Club*, 255 N.W.2d 536 (Wis. 1977), and *Seidl v. Knop*, 182 N.W. 980 (Wis. 1921), for the scope test: "The act cannot be deemed to be within the course of the employment unless, upon looking at it, it can fairly be said to be a natural, not disconnected and not extraordinary, part or incident of the service contemplated." *Cameron*, 307 N.W.2d at 168. The court also cited Prosser favorably: Scope includes "those acts which are 'so closely connected with what the servant is employed to do, and so fairly and reasonably incidental to it, that they

---

judgment. But in denying the Rule 50 motion, the court relied on its summary judgment decision.

may be regarded as methods, even though quite improper ones, of carrying out the objectives of the employment.' Prosser, Law of Torts, (4th ed.) pp. 460-61, sec. 70 (hornbook series)." *Cameron*, 307 N.W.2d at 168–69. The court decided reasonable inferences could lead to either scope conclusion, so further proceedings were necessary.

Another leading case is *Olson v. Connerly*, 457 N.W.2d 479 (Wis. 1990). There, defendant/physician Connerly blurred many lines. The University of Wisconsin Medical School employed him and plaintiff/medical assistant Olson, who worked together. Connerly soon became Olson's regular physician. Then he became her mental health counselor. Then they started seeing each other even more, including over lunch. Eventually they engaged in four or five instances of sexual contact, including intercourse. Olson sued Connerly.

Olson testified at trial she believed Connerly intended these sexual encounters to be therapeutic, but there was no evidence Connerly told her this, and he testified he did not intend the sexual encounters to be medical care. He testified that at the time he felt he was falling in love with her. Wisconsin's Attorney General refused to defend Connerly, but appeared at trial to argue the sexual contact was not within the scope of Connerly's employment under § 895.46. The trial judge instructed the jury to consider whether Connerly was actuated by a purpose to serve his employer or whether he had stepped aside from his employer's business to accomplish his own independent purpose. *Olson*, 457 N.W.2d at 481. The jury determined Connerly was not acting within the scope of his employment during the sexual encounters. The case reached Wisconsin's highest court.

The Wisconsin Supreme Court observed it is proper to look to scope cases outside the context of § 895.46 in defining "scope of employment" as used in § 895.46. The court concluded its scope cases "have always deemed significant the employee's intent at the time the acts in question were committed." *Id.* at 483. The court found its decision in *Finsland v. Phillips Petroleum Co.*, 204 N.W.2d 1 (Wis. 1973), instructive. There, the court articulated the controlling factors in scope cases: "Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." *Finsland*, 204 N.W.2d at 6 (quoting Restatement, 1 Agency 2d, page 504, § 228(2)). The *Olson* court concluded that "in resolving scope of employment questions, consideration must be given to whether the employee was actuated, at least in part, by a purpose to serve his or her employer." *Olson*, 457 N.W.2d at 479. "[A]n employee's conduct is not within the scope of his or her employment if it is too little actuated by a purpose to serve the employer or if it is motivated entirely by the employee's own purposes (that is, the employee stepped aside from the prosecution of the employer's business to accomplish an independent purpose of his or her own)." *Id.* at 483. So the jury instruction was proper.

In sum, *Olson* reiterated in the context of § 895.46 Wisconsin's time-worn test for scope: Conduct is not in the scope if it is different in kind from that authorized, far beyond the authorized time or space, or too little actuated by a purpose to serve the employer. *Id.* at 483. Serving the employer need not be the employee's only or primary purpose for the conduct to be in the scope. *Id.* But if the

conduct is "too little actuated by a purpose to serve the employer" then it is outside the scope. *Id.*[6]

### 3. *Seventh Circuit precedent*

We have applied the Wisconsin Supreme Court's interpretation of "scope of employment" in § 895.46 many times. In *Bell v. City of Milwaukee*, two police officers pursued an unarmed man fleeing a traffic stop. *Bell*, 746 F.2d 1205, 1215 (7th Cir. 1984), *overruled on other grounds by Russ v. Watts*, 414 F.3d 783 (7th Cir. 2005). Officer Grady's "gun discharged," killing Bell. *Id.* at 1215. Grady planted a knife in Bell's right hand and closed the hand around it. The two officers concocted a cover story. But Bell's sister insisted he did not

---

[6] Wisconsin's intermediate court is in accord. *See Thiele v. Robinson*, 913 N.W.2d 233, 2018 WL 526721, at *6 (Wis. Ct. App. 2018) (affirming summary judgment as act was outside employment scope for insurance coverage as a matter of law under *Olson*: "All of Robinson's alleged conduct was obviously to further his personal interest (a sexual relationship) and not in the interest of [the employer]."); *Lola M. v. City of Milwaukee*, 642 N.W.2d 646, 2002 WL 234234, at *3 (Wis. Ct. App. 2002) (affirming summary judgment because officer's sexual assaults were outside scope as a matter of law as he "[o]bviously" intended to serve himself and "unquestionably" not the City), *pet. for rev. denied*, 254 Wis.2d 263 (Wis. 2002); *Block v. Gomez*, 549 N.W.2d 783, 788 (Wis. Ct. App. 1996) (affirming decision after evidence but before deliberation that sexual assault was outside scope for vicarious liability as a matter of law as it was not partially actuated to serve employer); *Desotelle v. Cont'l Cas. Co.*, 400 N.W.2d 524 (Wis. Ct. App. 1986), *abrogated on other grounds by Kruckenberg v. Harvey*, 694 N.W.2d 879, 893–94 (Wis. 2005); *Crawford v. City of Ashland*, 396 N.W.2d 781, 784 (Wis. Ct. App. 1986) ("Limiting [§ 895.46's] protection to only that conduct that is within the scope of employment ensures that the statute would not protect a public employee who engages in outrageous or criminal conduct. By definition, such conduct would not be within the scope of employment.").

own that knife and he was left-handed. The City contested its responsibility to indemnify Grady under § 895.46 by arguing his actions were outside the scope because he lied during the investigation and perjured himself. The district court held Grady was in the scope so the City had to indemnify him. *Bell v. City of Milwaukee*, 536 F. Supp. 462, 478 (E.D. Wis. 1982), *aff'd in part and rev'd in part*, *Bell*, 746 F.2d 1205. The district court acknowledged that under Wisconsin law, bad faith may be relevant to the scope analysis, and quoted *Cameron*'s "so closely connected" test for scope. *Id.* at 478. The district court concluded Grady had dual motives. His actions were designed to further his own objective of escaping punishment and to further his employer's objectives. "He was performing his duties as a police officer but used quite improper methods of carrying out those duties." *Id.* We affirmed that part of the district court's decision. *Bell*, 746 F.2d at 1271.

In *Hibma*, we again applied the Wisconsin Supreme Court's interpretation of "scope of employment" in § 895.46. There, three deputies framed Hibma for burglaries they committed. *Hibma*, 769 F.2d at 1149–51. We quoted the *Scott*/*Seidl* and *Cameron*/Prosser tests. *Id.* at 1152. Akin to *Bell*, we concluded the deputies investigated, reported, and testified, and we concluded their actions were designed to serve the dual purposes of furthering their own objectives and their employer's objectives. *Id.* at 1153. We held the district court erred in granting the employer judgment notwithstanding the verdict. *Id.*

Our first major decision in this context after *Olson* was *Graham v. Sauk Prairie Police Commission*, 915 F.2d 1085 (7th Cir. 1990). There, a police officer shot and killed a non-fleeing, non-threatening suspect lying face down with his hands

cuffed. *Graham*, 915 F.2d at 1088. The district court held the employers had to indemnify. We quoted the two parallel scope tests articulated in *Cameron*: the "natural, not disconnected" test and the "closely connected" test. *Id.* at 1093. And we quoted at length the then-recent *Olson* decision's emphasis on intent: "'an employee's conduct is not within the scope of his or her employment if it is too little actuated by a purpose to serve the employer or if it is motivated entirely by the employee's own purposes.'" *Id.* (quoting *Olson*, 457 N.W.2d at 483). After distinguishing *Cameron* and *Desotelle*, we concluded a jury could not reasonably find the officer's conduct was too little actuated by a purpose to serve his employer. We concluded the officer was within the scope. *Id.* at 1095–96.

In sum, we have adhered to Wisconsin law regarding "scope of employment" in § 895.46. We tracked it through its reemphasis on intent and purpose. We have been willing to decide the issue as a matter of law, and we have left it for the jury when appropriate.

*4. Analysis*

Generally, scope of employment is a fact issue. *See Stephenson v. Universal Metrics, Inc.*, 633 N.W.2d 707, 713 (Wis. Ct. App. 2001). But, as the district court here correctly noted, when the facts are undisputed, and all reasonable inferences therefrom lead to but one conclusion, judgment as a matter of law is appropriate and required. "Wisconsin courts have stated that it is proper to decide the scope of employment issue on a motion for summary judgment as long as the underlying facts are not in dispute and reasonable inferences leading to conflicting results cannot be drawn from the undisputed facts." *Graham*, 915 F.2d at 1093 (citing *Cameron*,

307 N.W.2d at 169–70, and *Desotelle*, 400 N.W.2d at 529). Here, we have the benefit of a trial record, which reflects essentially the same evidence as that raised at the summary judgment stage. *See Martin v. Cty. of Milwaukee*, No. 14-CV-200-JPS, 2017 WL 4326512, at *3 (E.D. Wis. Sept. 28, 2017) (order under appeal here, noting that the district court previously denied summary judgment to County regarding scope and noting "the evidence adduced at trial was not materially different than that presented at the dispositive motion stage").

Courts have phrased the scope test for § 895.46 in slightly different but compatible ways. We distill the test to its essence. An act *is not* in the scope unless it is a natural, not disconnected and not extraordinary, part or incident of the services contemplated. An act *is not* in the scope if it is different in kind from that authorized, far beyond the authorized time or space, or too little actuated by a purpose to serve the employer. But an act *is* in the scope if it is so closely connected with the employment objectives, and so fairly and reasonably incidental to them, that it may be regarded as a method, even if improper, of carrying out the employment objectives. We must consider the employee's intent and purpose, in light of subjective and objective circumstances.

Here, we may take it as granted that the sexual assaults occurred during the authorized time and space limits of Thicklen's employment (although there may be some question about whether Thicklen was actually authorized to be in the particular locations of the sexual assaults at the times he perpetrated them).

But even when viewing the evidence in the light most favorable to Martin and the verdict, we hold no reasonable

jury could find the sexual assaults were in the scope of his employment. No reasonable jury could conclude the sexual assaults were natural, connected, ordinary parts or incidents of contemplated services; were of the same or similar kind of conduct as that Thicklen was employed to perform; or were actuated even to a slight degree by a purpose to serve County. No reasonable jury could conclude the sexual assaults were connected with the employment objectives (much less closely connected) or incidental to them in any way. No reasonable jury could regard the sexual assaults as improper methods of carrying out employment objectives. The evidence negates the verdict.

Uncontested evidence at trial demonstrated County thoroughly trained Thicklen not to have sexual contact with inmates. County expressly forbade him from having sexual contact with an inmate under any circumstances, regardless of apparent consent. County's training warned him that such sexual contact violates state law and the Sheriff's Office's mission. County not only instructed him not to rape inmates; it also trained him how to avoid or reject any opportunity or invitation to engage in any sort of sexual encounter with inmates. For example, if an inmate "comes on" to him, he should tell the inmate the behavior is inappropriate, discipline the inmate, and report the incident to a supervisor. Thicklen even answered quizzes demonstrating his understanding. Martin presented no evidence at trial that this training was deficient or that Thicklen did not understand it.[7]

---

[7] The district court presciently noted at trial, outside the jury's presence: "And if the evidence shows that he was trained not to become involved in this sort of activity, and that it was indeed criminal conduct,

Martin failed to offer any evidence the sexual assaults were natural, connected, ordinary parts or incidents of the services contemplated. She presented no evidence from which a reasonable jury could conclude these sexual assaults were similar to guarding inmates. And she presented no evidence from which a reasonable jury could conclude the sexual assaults were actuated in any way by a purpose to serve County.

Thicklen did not appear at trial. Martin did not introduce any testimony from him. The uncontested evidence showed he did not subjectively intend in any way to benefit his employer. He told her he would be fired if people learned. He took steps to avoid cameras. He threatened that if she reported the sexual abuse people would believe him. She feared punishment. No evidence or reasonable inferences remotely suggested he intended to benefit his employer. To the contrary, all evidence and inferences pointed to purely personal goals. A reasonable inference is he intended to obtain personal sexual pleasure from the assaults. Martin argues he might have intended to exert power, dominion, and control over her by sexually assaulting her. But that inference, while reasonable, still does not bring the sexual assaults within the scope because under that theory he would still have pursued purely personal goals. Any power, dominion, and control asserted or achieved through these sexual assaults would "belong to" and "benefit" only him, not County, on these facts. *Olson* reminds us that an employee's being "at least partially actuated by a purpose to serve the employer" is a *sine qua non* of scope. *Olson*, 457 N.W.2d at 483.

---

that may be the proverbial straw that broke the camel's back that removes the conduct from being within the scope of employment."

Intent is not just one of several factors to put in a balancing test.

The undisputed facts and reasonable inferences point ineluctably to the conclusions that Thicklen's abhorrent acts were in no way actuated by a purpose to serve County. He raped Martin for purely personal reasons, the rapes did not benefit County but harmed it, he knew the rapes did not serve County, and the rapes were outside the scope. As the district court correctly observed: "Of course, each discreet sex act has nothing to do with being a correctional officer." *Doe v. Cty. of Milwaukee*, 225 F. Supp. 3d 790, 807 (E.D. Wis. 2016) (order denying motion for summary judgment on indemnification).

Martin presented no evidence at trial that the sexual abuse was similar in kind to work Thicklen was employed to perform. This case is distinguishable from cases involving excessive force by police officers. Some force, even deadly force, is sometimes permissible for police officers. But the rapes in this case were not part of a spectrum of conduct that shades into permissible zones. Inmate rape by a guard usually involves no gray areas. *See S.V. v. Kratz*, No. 10-C-0919, 2012 WL 5833185, at *4 (E.D. Wis. Nov. 16, 2012) (Granting Wisconsin summary judgment against § 895.46 indemnification of a prosecutor who solicited sex from a victim; noting that in cases of sexual misconduct "it is often easier to draw bright lines because there is no spectrum of acceptable behavior"; and collecting cases finding sexually motivated acts to be outside the scope as a matter of law.). In *Johnson v. Cook County*, we recognized that under Illinois law, sexual assault categorically is never within the scope. *Johnson*, 526 Fed. Appx. 692, 697 (7th Cir. 2013). Wisconsin law comes close to that, but does not go so far. So we do not go so far.

Nor need we. We do not hold sexual assault could never be within the scope. We simply conclude that on these facts, even when viewed most favorably to Martin and the verdict, no reasonable jury could find these sexual assaults were within the scope.

As an aside, we note our conclusion is consistent with the Wisconsin Supreme Court's understanding of the public policy behind § 895.46. Wisconsin courts have determined that the purpose of the statutory indemnification is to enable public employees to perform their duties without fear of having to pay out of pocket for such performance. *See Crawford*, 396 N.W.2d at 784. Indemnification here would not further this purpose. We have sympathy for Martin, who loses perhaps her best chance to collect the judgment. But § 895.46 does not make public employers absolute insurers against all wrongs.

### III. Conclusion

Martin did not introduce any evidence from which a reasonable jury could conclude the sexual assaults were of the same or similar kind of conduct as that which County employed Thicklen to perform. Nor did she introduce any evidence from which a reasonable jury could conclude the sexual assaults were actuated even to a slight degree by a purpose to serve County. Either failing is fatal to her indemnification claim. She failed as a matter of law to sustain her burden. Therefore, County was entitled to judgment as a matter of law on indemnification. The district court erred by denying the Rule 50 motion. We need not address entitlement to a new trial or instructional error. As Thicklen is not party to this appeal, and as we reverse the only judgment against

County arising from the sexual assaults, we need not address the evidence of fraud.

We REVERSE and VACATE the judgment against County for indemnification and REMAND with instructions to enter judgment for County on that claim.